FREDERICK A. WIND, Respondent, v. THE FIFTH
NATIONAL BANK AND LON V. STEPHENS,
Receiver, Appellants.

St. Louis Court of Appeals, January 21, 1890.

1. **Banks :** ACCOUNTING. A depositor loses his recourse against a
bank for payments made by it on forged endorsements of his
checks, if, when his bank book is balanced, and is returned to him
together with the cancelled checks as vouchers, he has knowledge
of facts, from which he could, by the exercise of reasonable care
and inquiry, have discovered the forgeries, and if, owing to his
failure to make the discovery and communicate it, the bank
suffers loss or is placed in a worse position than it would otherwise
have occupied.

2. ———: ———: ESTOPPEL. There is no presumption of such loss or
disadvantage to the bank, but the same must be proven; and
unless it is affirmatively shown, the depositor is not estopped from
recovering from the bank the payments made on such forgeries.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL D. FISHER, Judge.

AFFIRMED.

*D. W. Shackleford, Boyle, Adams & McKeighan*
and *Draffen & Williams,* for the appellants.

(1) The court erred in giving instructions which
imposed no duty on the respondent to notify the bank
of the alleged forged endorsements on the checks or to
object to them until he actually knew that the endorse-
ments were forged, and also in refusing to give instruc-
tions asked for by the appellants imposing a duty on
respondent of diligence in discovering the forgery of
endorsements, and notifying the bank of such forgery.
*Bank v. Morgan,* 117 U. S. 96; *Weinstein v. Bank,* 69
Texas, 38; *Hardy Bros. v. Bank,* 51 Md. 587; *Bank v.*

*Bank*, 50 N. Y. 575; *Dana v. Bank*, 132 Mass. 156. (2) The court erred in modifying instruction 2 given for appellants by striking out the words, "or might have known by the exercise of reasonable care and inquiry, as to facts and circumstances which had come to his knowledge." See cases cited, also, *Hill v. Tissier*, 10 Mo. App. 299; 2 Pomeroy's Equity, sec. 809.

*W. C. Marshall* and *Christian & Wind*, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This action is brought by the customer of a bank to recover a balance of twenty-two hundred and two dollars and twenty-three cents, alleged to be due him as a depositor in the bank. The controversy between the plaintiff and the defendant grows out of the fact that four checks of the aggregate amount of twenty-two hundred dollars, drawn by the plaintiff against his funds in the bank in favor of various parties, were delivered by the plaintiff to one St. Maur, a co-adventurer with the plaintiff in certain speculations in railway vouchers, to be delivered by St. Maur to the payees named in the checks respectively, in purchase of such vouchers. St. Maur, instead of delivering the checks to the payees, forged their names upon them, and himself collected the money called for in them over the counter of the defendant bank, and appropriated it to his own use. The plaintiff's action proceeds on the ground that the defendant bank was bound, at its peril, to pay out moneys, which he had deposited with it, only to the payees named in his checks, or to their orders; and that, having paid the moneys called for in these four checks to a person other than the payees therein named, without the order of such payees, it has made the payments in its own wrong, and could not, on finally accounting with him, charge against him the amount of such checks. The defense

of the bank is that, on the twenty-ninth of July, 1884, the plaintiff's account with the bank was balanced and his pass book returned to him, together with all checks drawn by him as vouchers, including the four checks in question, and that, although the plaintiff, when the account was so balanced and his checks were so returned to him, knew, or *might have known by the exercise of proper care and diligence,* all the facts and circumstances connected with each of the four checks in question and the endorsements thereon, yet he wholly failed and neglected, *to the loss and prejudice of the bank,* to advise the bank of any objection thereto, until the lapse of an unreasonable time thereafter.

A trial before a jury resulted in a verdict and judgment for the plaintiff for the amount claimed, less a counter-claim consisting of a note for three hundred dollars given by the plaintiff to the bank to take up a fifth check, on which, as the plaintiff contended, the name of the payee had in like manner been forged by St. Maur, which note the plaintiff had given to the bank, according to his contention, before he became aware of the fact of the forgery. As the plaintiff does not appeal from the judgment against him on this counter-claim, it is to be laid out of view, and our attention confined to the matter of the four checks first named.

That the names of the respective payees of these four checks were forged by St. Maur, and that he collected the amounts named in these four checks over the counter of the defendant bank, are facts put in issue by the pleadings and found in favor of the plaintiff by the jury, and we do not understand that there is any controversy touching this question of fact. We regard the assignments of error as capable of being narrowed down to the consideration of one proposition; whether the court, in instructing the jury, erred in rejecting the theory of the defendants, stated in the passage which we have

underscored above, that the plaintiff, when the settlement of his bank account was made and his pass book with the cancelled checks was returned to him, was under a duty to the bank to object to the four checks at the time, or within a reasonable time thereafter, provided he might, by the exercise of reasonable care and inquiry as to the facts and circumstances which had come to his knowledge, have ascertained that these checks had been forged. The court, in the very full instructions by which it submitted the issues to the jury, confined the plaintiff's obligation to give timely notification to the bank of the fact that these checks had been forged, to the hypothesis of the plaintiff having *actual knowledge* of such forgery; and struck out of an instruction tendered by the defendant the hypothesis, that he was under the same duty if he "might have known, by the exercise of reasonable care and inquiry as to facts and circumstances which had come to his knowledge," that there were included in said checks so delivered to him the checks in controversy as charges against his account, and that the endorsements of the names of the payees thereon were forged, or written without authority.

We regard these rulings as presenting two questions: (1) Whether the customer of a bank, when his bank book is balanced and returned to him with the checks which he has drawn against his funds in bank, cancelled and returned therewith as vouchers, is under the affirmative duty of making inquiry, where there are facts and circumstances sufficient to excite the suspicions of a reasonable and prudent man, whether any of the checks so returned to him have been forged, and, if he finds that they have been, of conveying such information seasonably to the bank. We say, where there are facts and circumstances sufficient to excite the suspicions of a reasonable and prudent man; because, without stating the evidence in detail, it is quite clear upon this

record that the jury might properly have found that there were such facts and circumstances. (2) Whether a failure to notify the bank of the forgeries so discovered within a reasonable time estops the customer from impeaching the account, without reference to the inquiry whether, in point of fact, the bank sustains loss, or is placed in a worse position, by his failure so to do. For the purposes of this case the decision of the former of these propositions is not strictly necessary; because we have come to the conclusion on the second proposition that, in order to avail itself of this estoppel, the bank must show, *as a fact*, to the satisfaction of the jury, that it did suffer loss, or was placed in a worse position, by the failure of the customer seasonably to discharge this duty,—a matter which we shall speak of further on.

I.   Upon the question of the duty of the depositor of a bank, when his pass book is balanced and returned to him by the bank with his checks cancelled as vouchers. to examine the same within a reasonable time and notify the bank of any errors or forgeries, there is, unfortunately, a difference of opinion in the courts. In New York, the doctrine seems to be settled that the depositor owes no duty to the bank to examine the checks, when thus returned by the bank to him, and that his neglect so to do, or his confiding the duty to a clerk, who conceals the true state of facts from him and from the bank officers for fraudulent purposes of his own, does not render the balance as returned by the bank obligatory upon him, or estop him from afterwards proving that some of the checks returned by the bank were forgeries. *Weisser v. Denison*, 10 N. Y. 68; s. c., 61 Am. Dec. 731; re-affirmed in *Welsh v. Bank*, 73 N. Y. 424; s. c., 29 Am. Rep. 175; and also in *Frank v. Bank*, 84 N. Y. 209; s. c., 38 Am. Rep. 501; s. c. in court below, 37 N. Y. Sup. 26; 45 N. Y. Sup. 452. But, in these cases, the plaintiffs had no suspicions of the

forgeries until the time when they were discovered, and when the bank was notified of them. We do not understand that, during the intervals between the balancing of the books and the discovery of the forgeries, there were circumstances which would have put a reasonably prudent man upon inquiry as to whether the forgeries had been committed.

Other courts have taken the view that the relation between the banker and customer is so far fiduciary in its character, that each owes certain duties to the other, and that, when the book of the customer is balanced at his request and returned to him with his checks cashed as vouchers, he is under an obligation to the bank to examine the book and checks within a reasonable time, and, in case of the discovery of any forgeries in the checks, to notify the bank of that fact.

In *Dana v. National Bank*, 132 Mass. 156, a depositor drew his check upon his bank for a certain amount, payable to the order of a person named, His clerk fraudulently erased the name of the payee, and obtained the money on the check from the bank. On the first day of the following month the bank, according to its course of business, sent the depositor a monthly statement, with which it returned this check as paid. After another monthly statement had been in like manner sent to the depositor by the bank, the depositor drew from the bank the balance remaining according to these statements, and made no objection to the payment of the check in question until twenty-three months after the payment. Thereafter the depositor, having discovered the fraud of his clerk in changing the name of the payee, brought an action against the bank for money had and received, to recover the amount of the check on the ground that it had been paid by the bank without the order of the payee. The bank requested an instruction to the effect that if the plaintiff did not, after a reasonable opportunity to examine

the checks, object to the payment of the check in question, he would be presumed to have ratified and adopted it. It was held that this instruction was rightly refused. But the trial court further gave instructions to the effect that, unless the plaintiff had actual personal knowledge of the mistake in the monthly statements, all evidence in reference to them was to be disregarded. As there was no evidence of such knowledge, the effect was that there was no evidence of ratification left to the jury. It was held that this was a mis-direction; that the evidence in respect of the monthly statements, and other evidence bearing upon them, should have been submitted to the jury upon the question of implied ratification of the payment to the plaintiff's clerk who had made the fraudulent alteration. The court, speaking through Mr. Justice ALLEN, said: "When the error in an account is not a mere mistake in statement, but is the statement of a mistake in fact,—of some act of a party which is not for his advantage, and by which his condition is changed,—a different rule will apply. The instructions do not refer to any negligence of the defendant. They assume the case of a check signed by the plaintiffs and apparently genuine, taken in good faith by mistake. The mistake was in the payment of the money upon an altered check, believed to be genuine; it was not for the advantage of the defendant (the bank), and its condition was changed by it. It was in the course of dealings between the parties in relation to which each owed duties to the other. The facts concerning the monthly statements are facts in the dealings between the parties in relation to the check and the payment, which the defendant offers as evidence upon the question whether the plaintiffs have so failed in their duty to the defendant as to be deemed to have adopted the check and ratified the payment of it. The plaintiffs owed to the defendant the duty of exercising due diligence to give it information that the payment was unauthorized; and

this included not only due diligence in giving notice of their knowledge of the forgery, but also due diligence in discovering it. If the plaintiffs knew of the mistake, or if they had that notice of it which consists in the knowledge of facts which, by the exercise of due care and diligence will disclose it, they failed in their duty; and adoption of the check and ratification of the payment will be implied. They cannot now require the defendant to correct a mistake to its injury, from which it might have protected itself but for the negligence of the plaintiffs. Whether the plaintiffs were required, in the exercise of due diligence, to read the monthly statements or to examine the checks, and how careful an examination they were bound to make, and what inferences are to be drawn, depend upon the nature and course of dealing between the parties, and the particular circumstances under which the statements and checks were delivered to them."

In *Leather Manufacturers' Bank v. Morgan*, 117 U. S. 96, the supreme court of the United States affirmed the same view of the duty of a depositor to his banker on receiving his bank book balanced, with paid and cancelled checks returned as vouchers. The reporter's head-note seems to be a correct summary of what the court decided : "(1) A depositor in a bank, who sends his pass book to be written up and receives it back with entries of credits and debits, and his paid checks as vouchers for the latter, is bound personally or by an authorized agent, and with due diligence, to examine the pass book and vouchers, and to report to the bank, without unreasonable delay, any errors which may be discovered in them; and, if he fails to do so, and if the bank is thereby misled to its prejudice, he cannot afterwards dispute the correctness of the balance shown by the pass book. (2) If a depositor in a bank delegates to a clerk the examination of his written-up pass book and paid checks returned therewith as

vouchers, without proper supervision of the clerk's conduct in the examination, he does not so discharge his duty towards the bank as to protect himself from loss, if it turns out that, without his knowledge, the clerk committed forgery in raising the amounts of some of those checks, and thereby misled the bank to its prejudice, in spite of due care on the part of its officers. (3) In this case it was held that the question whether the depositor exercised, in regard to such examination, the degree of care required of him in the circumstances disclosed by the evidence, including the relations of the parties, and established usages of business, and the question whether the endorsement of a particular check was, under the evidence, an endorsement in blank, or one for deposit to the credit of the depositor, were for the jury to determine under appropriate instructions as to the law." The court distinguished its previous decision in *First National Bank v. Whitman*, 94 U. S. 343, where there is an observation that the ordinary writing up of a bank book, with the return of vouchers or statement of accounts, precludes no one from ascertaining the truth and claiming its benefit. The court concede this to be the general rule, but they also say: " Without impugning the general rule that an account rendered, which has become an account stated, is open to correction for mistake or fraud, other principles come into operation where a party to a stated account, who is under a duty, from the usages of business or otherwise, to examine it within a reasonable time after having an opportunity to do so, and give timely notice of his objections thereto, neglects altogether to make such examination himself, or to have it made, in good faith, by another for him; by reason of which negligence, the other party, relying upon the account as having been acquiesced in or approved, has failed to take steps for his protection, which he could have taken had such notice been given.

In other words, parties to a stated account may be estopped by their conduct from questioning its conclusiveness." *Ib.*, p. 107. The learned judge then proceeds to reason the question on the theory of estoppel *in pais*, and cites many decisions to the effect that, in order to raise such an estoppel, it is not always necessary that the party to be estopped should have *intended* that the other party should rely upon his conduct in the manner in which the other party did, but that in many cases estoppels may arise from a party's being misled to his injury by the *negligent* failure of the other party to perform a duty toward the former, incumbent upon him. *Ib.*, 108, *et seq.*

The same principle was applied by the supreme court of the United States in a case where an assistant treasurer of the United States had received certain supposed treasury notes, endorsed by the holders to the order of the secretary of the treasury for redemption, in accordance with an act of congress; which notes, when examined at the treasury department, were ascertained to be forgeries, of which prompt notice was given. The court, speaking through Chief Justice WAITE, said: "It is, undoubtedly, also true, as a general rule of commercial law, that where one accepts forged paper purporting to be his own, and pays it to a holder for value, he cannot recall the payment. The operative fact in this rule is the acceptance, or more properly, perhaps, the adoption, of the paper as genuine by its apparent owner. * * * He must repudiate as soon as he *ought* to have discovered the forgery; otherwise he will be regarded as accepting the paper. Unnecessary delay under such circumstances is unreasonable; and unreasonable delay is negligence, which throws the burden of the loss upon him who is guilty of it, rather than upon one who is not.' * * * What is reasonable must in every case depend upon circumstances; but until a reasonable time has in fact elapsed,

the law will not impute negligence on account of delay." *Cooke v. United States*, 91 U. S. 389, 396.

The case of *Weinstein v. Bank*, 69 Tex. 38, was analogous on its facts to the case at bar. Weinstein was a depositor in the bank. His pass book had been balanced, and his checks returned to him, in June. These checks included several forged checks, as was claimed by Weinstein, which forgery had not been discovered by him until the following August, when he had demanded repayment, which was refused. He thereupon brought an action against the bank to recover the amount of his deposit, which the bank withheld from him on account of its payments on these alleged forged checks. The bank pleaded that the plaintiff, having failed to discover and give notice of the forgery in a reasonable time, was estopped from questioning the correctness of the account; but, as the bank in its plea failed to allege that it had sustained any loss or injury by reason of the plaintiff's failure sooner to notify it of the forgery, it was held that exceptions to the plea were properly sustained.

Further on the court, in passing upon the instructions which the trial court gave to the jury, denied the suggestion of Mr. Daniels, in his work on negotiable instruments, that the depositor owes the bank no duty which requires him to examine his pass book or vouchers, with a view to the detection of forgeries of his name, and that he may, therefore, repudiate such a charge when the forgery is discovered. 2 Dan. Neg. Instr., sec. 1370. On the contrary, the Texas court, speaking through Mr. Justice GAINES, say : "We think there may be cases in which a bank that has paid forged checks may be put in a worse position by the failure of the depositor to detect the forgery upon return of his pass book within a reasonable time, than it would have been had the fraud been promptly discovered and denounced. In such a case, injury having resulted, the

transaction contains every element of an estoppel.  The object of the statement of the account in the pass book and its return with the checks is to apprise the depositor of the full state of his account, as shown by the books of the bank, to the end that he may verify it, if it be correct, or detect its errors, if it be found erroneous.  The banker impliedly says to the depositor: This is my account; examine it, and, if not found correct, report to me its inaccuracies.  And, should the latter fail to complain within a reasonable time, the banker would have the right to consider that there was no objection to it.  By his failure to speak in proper time, he virtually admits the correctness of the items charged.  It is now held that an estoppel may be executed, not only when the party sought to be concluded knows the material facts he is charged with having represented or concealed, but also when he is "in such a position that he *ought to have known* them, so that knowledge will be imputed to him."  2 Pomeroy's Equity, sec. 809.  Hence, it is the duty of the depositor to know whether the account is correct or not, and promptly to report a forgery when detected.  Should he negligently fail to make the examination and consequent discovery, when he could have discovered it, it is as if he had expressly admitted the genuineness of the checks, and he will not be permitted to deny the fact, provided the bank be prejudiced by his failure.  It has been held by this court that when one party has been prevented, or induced by the conduct and representations of another from taking prompt action for the collection of his debt, that this is such a change in his position for the worse as to meet the requirement of the law in order to create an estoppel."

The case of *Hardy v. Bank*, 51 Md. 562, is also analogous on its facts to the case under consideration. We extract the following observations from the opinion, as showing that that court also proceeded upon the view

that the depositor owes a duty to his banker, when he has received his book balanced and the checks returned to him, to examine them with a view of detecting forgeries, and to notify the banker within a reasonable time of any forgeries which may have been discovered. The court, speaking through Mr. Justice ALVEY, said: "It must be borne in mind that the appellants (the depositors) were not bound at their peril and under all circumstances to detect the forgery. They were simply bound to refrain from doing any act that would reasonably have the effect of misleading the appellee (the bank) to its hurt or injury, and not to fail to do any act that positive duty required them to do for the protection of the appellee. When the bank account was balanced in the bank book on the thirteenth of July, 1873, and the book and the cancelled checks were returned to the appellants, after the lapse of a reasonable time (within which the checks and account could have been examined and compared), without objection being made, the presumption arose that the account as balanced, and also the checks charged therein, were all correct. This presumption, however, proceeds upon the ground simply of an implied admission, and is only *prima facie* in its effect. Such presumption arises from the natural and usual habits of careful business men to examine and scrutinize such accounts when rendered; but the presumption is liable to be repelled, by showing that the error or fraud complained of was not discoverable by the exercise of reasonable care and diligence, or that there was no such appearance of things as to excite the suspicion of a reasonable man, or that, for any reason, the party had not had an opportunity to examine the account." *Ib.*, p. 586.

Other decisions could be cited in support of the proposition that when a customer receives from a banker his pass book balanced, with paid checks returned as vouchers, he owes the duty to his bank to

examine the same within a reasonable time, with a view of discovering mistakes or forgeries. The case is closely analogous to the case where a person receives forged paper or counterfeit money in payment or settlement from another person. Here the general rule is that the person receiving the counterfeit money or the forged security is under the duty of ascertaining the forgery and returning the money or paper to the party delivering it in·payment within a reasonable time, in order that he may not be precluded by lapse of time from making reclamation upon the party from whom he received it. *Gloucester Bank v. Bank*, 17 Mass. 33, 42; *Third National Bank v. Allen*, 59 Mo. 310.

In view of the foregoing authorities, and restraining our decision to the facts of the case before us, we have no difficulty in holding that, where a customer of a banker receives his book from his banker balanced, with his checks returned cancelled, as vouchers to the entries make by the banker, and there are circumstances within his knowledge at the time from which, by the exercise of reasonable care and inquiry, he would have been able to ascertain that some of the checks so returned were altered or forged, and he fails to exercise such reasonable care and inquiry, and the bank thereby suffers loss, or is placed in a worse position than it would have occupied if such inquiry had been made, and the facts ascertained and communicated to it, within a reasonable time,—the customer has lost his recourse against the bank. Indeed, we regard the case, where there are facts within the knowledge of the customer sufficient to put him on inquiry, provided he proceeds as a reasonably careful, prudent and honest man, and where the inquiry, if made, would disclose the fact,—as tantamount to a case where the person has actual knowledge; and we understand this to be a general principle in the law.

II. But there is no evidence in this record that the bank suffered any loss, or was in any respect placed at

disadvantage, by the failure of the plaintiff to discover the fact of the forgeries, and to communicate the fact to the bank, between the date when his pass book was returned to him balanced by the bank, accompanied by the checks, and the date at which the fact was communicated by him to the bank. This presents the second question and the one on which the case must turn, whether, in such a case, it will be conclusively presumed that the bank suffered prejudice from the laches of the customer, or whether that fact must be affirmatively shown to the satisfaction of the jury. In respect of this question there is also an unfortunate division of judicial opinion. In the leading case in the supreme court of the United States, from which we have already quoted (*Leather Manufacturers' Bank v. Morgan*, 117 U. S. 96), the court take the view that prejudice is to be conclusively presumed, in the following language : "But it is a suit by the depositor, in effect to falsify a stated account, to the injury of the bank, whose defense is that the depositor has, by his conduct, ratified or adopted the payment of the altered checks, and thereby induced it to forbear taking steps for its protection against the person committing the forgeries. As the right to seek and compel restoration and payment from the person committing the forgeries was, in itself, a valuable one, it is sufficient if it appears that the bank, by reason of the negligence of the depositor, was prevented from promptly, and, it may be, effectively, exercising it." The court cite *Continental National Bank v. Bank*, 50 N. Y. 575; *Voorhis v. Olmstead*, 66 N. Y. 113, 118; *Knights v. Wiffen*, L. R. 5 Q. B. 660; *Casco Bank v. Keene*, 53 Me. 103; *Fall River National Bank v. Buffington*, 97 Mass. 498.

But in the recent Texas case, from which we have already quoted (*Weinstein v. National Bank*, 69 Tex. 38), this conclusion of the supreme court of the United States is denied, the court saying: "We do not wish to

be considered as assenting to that doctrine. We think that it is a matter for the jury under proper instructions from the court."

In the Maryland case, from which we have also quoted above (*Hardy v. Bank*, 51 Md. 562; s. c., 34 Am. Rep. 325, 331), the question is more carefully discussed, and the court holds that it rests upon the doctrine of estoppel *in pais*, which doctrine is to be invoked to prevent injustice where one has been led into error by the fraud or fault of another. "It is," says Mr. Justice ALVEY, "a most valuable doctrine for the promotion of justice; but it can have no application except where the party invoking it can show that he had been induced to act, or refrain from acting, by the acts or conduct of the adverse party, under circumstances that would naturally and rationally influence ordinary men. It can, therefore, only be set up and relied on by a party who has been actually misled to his injury; for, if not so misled, he can have no ground for the protection that the principle affords."

Our own courts have generally acted upon this principle in applying the doctrine of estoppel *in pais*. They have generally allowed this equitable principle to be invoked, not where the party seeking to invoke it has been *theoretically* prejudiced, but only where he has been prejudiced in point of fact, and this fact must be shown by him. *Eitelgeorge v. Building Association*, 69 Mo. 52; *Spurlock v. Sproule*, 72 Mo. 503; *Acton v. Dooley*, 74 Mo. 63; *Rogers v. Marsh*, 73 Mo. 64. We applied this principle in the case of *Bloch v. Price*, 24 Mo. App. 14, to the case where the plaintiff sought to charge a retiring partner on the ground that he had retired without any notice having been given of the dissolution of the firm. We also applied it, after much consideration, in the recent case of *Conrad v. Fisher*, 37 Mo. App. 313.

Applying it to the facts of this case, it must appear that the ruling of the court, in striking out the portion

of the defendant's instruction, already quoted, and in refusing to submit the case to the jury on the theory that the plaintiff could not recover if, after having acquired knowledge of facts sufficient to put him on inquiry, he failed to discover and report the forgeries to the defendant within a reasonable time, the court committed no error which was prejudicial to the bank; since there is no evidence tending to show that, by reason of the delay, the bank lost any recourse whatever upon St. Maur, who committed the forgeries, or otherwise suffered loss, or changed its position to its disadvantage.

This disposes of the essential question upon which the case has been contested, and it results that the judgment must be affirmed. It is so ordered. All the judges concur.