(4 App. Div. 290.)

SAGE et al. v. SHEPARD & MORSE LUMBER CO.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

1. PRINCIPAL AND AGENT—APPARENT SCOPE OF AUTHORITY.

Plaintiffs had in their employ one A., as traveling salesman, with power to solicit and accept orders for lumber, and agree on the prices, and to direct plaintiffs' employés to ship the lumber sold from their yard, and also to buy lumber from other dealers in Albany, on plaintiffs' credit, to fill such orders. After A. had been in plaintiffs' employ for several years, and had made many sales to defendants, he falsely represented that plaintiffs had authorized him to deal on his own account in such lumber as plaintiffs did not have on hand, and he solicited for himself orders for such lumber. Defendants believed his representations, and gave him orders, which A. filled, in part by causing lumber to be shipped from plaintiffs' yard, and in part by buying lumber from other dealers in plaintiffs' name, and on their credit; taking bills of lading in their name, and making out and transmitting invoices to defendants. He did not show the bills of lading to defendants, and he concealed the transactions from plaintiffs. Plaintiffs never did or omitted anything which would lead defendants to suppose that they had permitted A. to sell lumber on his own account, or to corroborate A.'s false statements to that effect. *Held,* that such acts of A. were not within the apparent scope of his authority, and plaintiffs were entitled to recover from defendants the value of the lumber sold to them by A. on his own account, though they had paid A. for it.

2. SAME—FACTOR'S ACT.

A traveling salesman who has power to solicit and accept orders and agree on prices for the goods, and to direct shipment of the goods, and

also to buy goods from other dealers to fill such orders, is not a factor, within Laws 1830, c. 179 (Factors' Act), providing that every factor or other agent intrusted with the possession of any bill of lading, or, not having documentary evidence, who shall be intrusted with any merchandise for the purpose of sale, shall be deemed the owner, as to the purchaser who buys it in good faith, where he had procured, by fraud, bills of lading in his employer's name, but did not show them to the buyer.

3. TROVER AND CONVERSION—DEALING WITH AGENT AS PRINCIPAL.
Where a person buys goods of the owner's agent, with knowledge of the agency, relying entirely on the representations of the agent that the owner had authorized him to sell on his own account, the subsequent sale of the goods by the buyer is a conversion.

4. TORT—WAIVER—ELECTION TO SUE IN CONTRACT.
Where plaintiffs waived defendants' tort in wrongfully taking plaintiffs' goods, and seek to recover their value on an implied contract to pay the price, such waiver does not ratify the tort, or admit its nonexistence, but only the right to recover as in trover is waived.

Appeal from judgment on report of referee.

Action by Henry W. Sage and others against the Shepard & Morse Lumber Company for the value of certain goods purchased by defendants from plaintiffs' traveling salesman. There was a judgment in favor of plaintiffs, and defendants appeal. Modified.

The complaint alleged in substance, among other things, that the defendants wrongfully obtained possession of a large quantity of lumber belonging to the plaintiffs, and converted the same to their own use; that the plaintiffs waive defendants' torts in taking the lumber, and ask to recover its value upon the contract implied by the facts. The answer was a general denial. The facts shown upon the trial, and as found by the referee, are that for many years prior to December 1, 1890, the plaintiffs were lumber dealers in Albany, and the defendants in Boston, Mass.; that the plaintiffs had for many years in their employ one Joseph B. Abbott, as their traveling salesman, with power to solicit and accept orders for lumber, and to agree upon the prices therefor, and to direct plaintiffs' employés to ship and consign lumber from the stock in their yard to fill such orders, and to buy lumber from other dealers in Albany upon the credit of plaintiffs to fill such orders, and to cause the same to be shipped and consigned to fill the same. The defendants had many times before the transactions here in question bought large quantities of lumber of the plaintiffs through Abbott, and the greater part of their extensive purchases from the plaintiffs were made through him, as plaintiffs' salesman or representative. About December 1, 1887, Abbott falsely represented to the defendants that the plaintiffs had given him the privilege of dealing on his own account in such lumber as they did not have on hand, and he solicited for himself their orders for such lumber. The defendants believed his false representations, and gave him from time to time orders for the lumber here in question. These orders Abbott filled by directing plaintiffs' employés to load upon cars some of the lumber from plaintiffs' yard, and other portions of it from the yards of other dealers in Albany, from whom Abbott bought the same in plaintiffs' name, and upon their credit, for which plaintiffs paid in the due course of business, without suspicion. Abbott caused the cars thus loaded to be consigned to the defendants, who received the same in Boston, and paid Abbott for the lumber thus sent, relying upon his representation that this lumber was his own, and that he could sell it to them upon his own account. Abbott kept the money thus received, and neither party knew or suspected the truth until after Abbott died, by suicide, in December, 1890, before which time the defendants had sold and disposed of the lumber thus bought of Abbott. The referee found in favor of the plaintiffs in the sum of $26,602.76, with interest from December 2, 1890.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-NAM, and MERWIN, JJ.

M. Hale, for appellants.

H. Harris, for respondents.

LANDON, J.   The defendants had frequently bought lumber of the plaintiffs, the plaintiffs acting, in making the sales, by Abbott, their clerk and salesman.   Abbott, we assume, from the evidence, had full power from the plaintiffs to make, as their agent and in their name, sales of their lumber to the defendants.   If he had sold the lumber here in question to the defendants in the name of the plaintiffs, such sales would have been within the scope of his authority; but he had no authority to sell the lumber for himself, and every act which he did and representation that he made in effecting these sales was in his own name, and not in the plaintiffs'.   The defendants knew that Abbott was the agent of the plaintiffs in the sale of their lumber in their name and upon their account.   Such agency implied the denial of his power to sell it in his own name or upon his own account.   Nevertheless, in respect to this lumber, the defendants believed Abbott's false statement that the lumber was his own, that the plaintiffs permitted him to buy and sell certain kinds of lumber which they did not deal in, upon his own account; and, believing his statement, they dealt with him as the owner of it, and paid him for it.   They did not rely upon the plaintiffs at all, but solely upon Abbott.

The plaintiffs cannot lose their right to their property by means of this fraud of Abbott, unless some act or omission of their own misled the defendants into believing Abbott's false representations that he was himself the owner of it, or had the right to sell it upon his own account instead of upon theirs.   McGoldrick v. Willits, 52 N. Y. 612; Barnard v. Campbell, 55 N. Y. 456; Smith v. Clews, 114 N. Y. 190, 21 N. E. 160.   The referee does not find and the evidence does not show that the plaintiffs ever did any act or omitted any which would tend to lead the defendants to suppose that the plaintiffs had permitted Abbott to sell lumber upon his own account while he was salesman of lumber for them, or that would seem to lend any corroboration to Abbott's false statement to the defendants to that effect.   If, in any aspect of the case, it can be said that the plaintiffs clothed Abbott with the possession of the lumber or indicia of title to it, yet when Abbott told defendants that he was selling them lumber which the plaintiffs did not keep, which he had "picked up" of other dealers, and was dealing in on his own account, he told them that plaintiffs had not clothed him with the possession or indicia of title to this lumber, and hence excluded recourse to them upon any such basis.   The case is that of a person who has by fraud obtained the possession of the chattels of his principal, and, having no other apparent evidence of title than his naked possession, sells them as his own to buyers who know him to be the agent of his principal in dealing in such property, and have no reason except his own word to believe that this property is not that of his principals.   Of course, the buyers in such case obtain no better title than their vendor possessed; that is, none at all.   Soltau v. Gerdau, 119 N. Y. 380, 397, 23 N. E. 864; Hills v. Snell, 104 Mass.

173–177. Because they obtained no title, their subsequent sale and disposition of the property was without right, and a conversion of it. Pease v. Smith, 61 N. Y. 477. It cannot be said that the plaintiffs had any intention thus to part with their property; and, as the defendants cannot trace their possession to any act of the plaintiffs indicating such intention, they were guilty of a conversion in disposing of it. Id.; Bassett v. Spofford, 45 N. Y. 387. The defendants' argument to the contrary, as, indeed, in respect to every aspect of their defense, rests upon the assumption that the plaintiffs actually or apparently authorized Abbott to take possession of the lumber, and dispose of it as owner. The complete answer to this is that the plaintiffs did nothing of the kind. Abbott managed to conceal the transactions from them. They had no knowledge of them until after his death. To suppose that they meant to intrust the possession of this lumber to Abbott in such way that he could dispose of it as the apparent owner finds no warrant in the evidence, unless we can suppose that plaintiffs' servant, caretaker, and traveling salesman, and, in the absence of the plaintiffs, their manager in the usual course of their business, was authorized to intrust himself with the possession of his principals' property, in hostility to their possession, and to represent himself as the owner, and that, too, to the customers of his principals, who had long dealt with him as their agent. Whatever Abbott did, having the semblance of authority from his principals, was in obtaining and loading the lumber upon the cars at Albany, and in procuring bills of lading therefor from the railroad company in the name of the plaintiffs as consignors, and of the defendants as consignees; but these acts he concealed from the defendants, and the plaintiffs did not discover the facts until about the time of Abbott's death. Abbott, of course, did not show the bills of lading to the defendants. He made out and sent them invoices for it in his own name. So that, in the whole transaction, the devices by which he deceived both parties were solely his own, and owed their success to his criminal acts.

The defendants invoke the maxim that, where one of two innocent persons must lose by the fraud of a third, the loss should rather fall upon him whose act has enabled the fraud to be committed. But, as we have seen, the facts do not permit the defendants to claim that it was any act or omission of the plaintiffs that led the defendants to trust to Abbott's denial of his agency. It was rather their own lack of caution, under circumstances suggesting caution; that is, the rule caveat emptor.

The defendants invoke the factor's act (chapter 179, Laws 1830). The act of Massachusetts is shown to be substantially the same as our own. The act provides that every factor or other agent intrusted with the possession of any bill of lading, etc., or not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale, shall be deemed the owner as to the purchaser who buys it in good faith. Abbott was not a factor or such an agent as the statute contemplates. He had bills of lading in plaintiffs' name, but he did not show them to the defendants. Besides, the plaintiffs did not in-

trust them to him.  He fraudulently procured them.  He presented to defendants the invoices he made out himself in his own name, and thus he warned the defendants that he was no agent, and that they dealt with him at their own risk.  Nor did the plaintiffs intrust Abbott with the possession of the lumber.  He never was intrusted with the possession of any of it apart from the possession of the plaintiffs.  His possession was that of the servant, salesman, and manager of the plaintiffs upon their own premises, and at their places of business.  As between plaintiffs and defendants, Abbott's powers were such as their customary dealings with one another through him implied.  These dealings implied Abbott's agency.  When Abbott appeared to be in possession of this lumber, and openly claimed to own it, and told defendants that he obtained it from others, and not from the plaintiffs, no pretense or color of ownership derived from the plaintiffs existed.  The defendants, in order to bring the plaintiffs within the factor's act, would have to show that they actually did intrust Abbott with the possession of the lumber for sale.  Howland v. Woodruff, 60 N. Y. 75; Kinsey v. Leggett, 71 N. Y. 387; Soltau v. Gerdau, 119 N. Y. 380, 23 N. E. 864; Bank v. Shaw, 61 N. Y. 283; Thacher v. Moors, 134 Mass. 156.  It is not enough to show that plaintiffs' confidence in Abbott or their negligence made it easier for him to abstract the lumber.  Pease v. Smith, 61 N. Y. 477; Knox v. Eden Musee American Co., 148 N. Y. 441, 42 N. E. 988.  The defendants urge that the plaintiffs, by waiving the alleged torts, and suing upon the implied contract, ratified the wrongful acts of Abbott.  There is evidence that plaintiffs once obtained a written statement from Abbott that he was a thief and a liar.  The plaintiffs destroyed the statement.  We have no further evidence upon the subject, except that the plaintiffs did not discharge him from their employment.  The inference to be drawn is that in some respect he had wronged somebody, perhaps the plaintiffs, and that they punished him by extorting from him this humiliating confession, or that he made it to appease them.  Were they wrong or even negligent in continuing him in their employment?  We cannot so hold.  The evidence fails to bring the plaintiffs within the imputation of the rule announced in the case last cited.

The complaint charges the defendants with tortiously acquiring possession of plaintiffs' lumber, and converting the same to their own use, and selling the same, and alleges that plaintiffs elect to waive the defendants' tort in taking the lumber (not Abbott's), and rely upon the contract to pay, as the facts imply.  Upon the facts, defendants were liable upon two grounds,—one in tort; the other upon implied contract.  The plaintiffs waive the tort, and assert the implied contract.  The mere waiver of the defendants' tort is neither a ratification of it, nor an admission of its nonexistence. All the acts constituting the tort remain, and are provable as showing the defendants' liability upon implied contract; but the right to recover as in trover or for conversion is waived.  The contract implied is that defendants should pay the plaintiffs for the lumber the same as if plaintiffs had sold it to them.  Terry v. Munger,

121 N. Y. 161, 24 N. E. 272. That could not be so if Abbott's claim to sell it as his own, or defendants' acts in paying for it, were ratified. The plaintiffs simply waived the defendants' tort in taking the lumber, not their liability to pay the true owners for it. The defendants' title to the lumber was thereby confirmed, but was confirmed as if sold to them by plaintiffs through Abbott, as their agent, and not paid for.

These views dispose of the main exceptions to the findings of the referee.

Exceptions were taken to the reception of evidence as to certain declarations of the president of the defendants. The findings of the referee negative the fact these declarations were given to establish. Our examination of the case satisfies us that this testimony, whether believed or not, could not legally or rightfully make any difference in the result. We need not, therefore, pass upon the immaterial question whether, if material, its reception was proper.

The defendants except to the referee's finding that the value of the lumber was $26,602.76. There was testimony tending to show that that was its value at Albany, when Abbott abstracted it. The defendants actually paid Abbott $26,362.41 for the lumber, and the testimony in their behalf is that they paid him its full market value. One of the plaintiffs, who could not state that he had seen the lumber, testified to its value, and based his estimate upon the tally books containing the items and a description and the quantity of each car load. These tally books were verified by the testimony of other witnesses. The difference in values, $240.37, is comparatively small, but we are inclined to think, since the plaintiffs' right to recover is the same as if Abbott had sold the lumber to defendants for the plaintiffs, that the price for which he sold it, in view of the uncontradicted evidence on the part of defendants that they paid him its full value, should govern. We therefore reduce the judgment as of the date of December 2, 1890, in the sum of $240.37, and, as thus modified, direct that the judgment be affirmed, with costs. All concur.