PITTSBURG & MIDWAY COAL COMPANY, Appellant, v. LANING HARRIS COAL COMPANY, Respondent.

Kansas City Court of Appeals, June 12, 1916.

1. **CONVERSION: Thief: Shipping Clerk: Selling in Own Name.** Plaintiff, a coal mining corporation in Kansas, shipped coal to market in Kansas City, Missouri, to defendant, a coal commission company who would sell for plaintiff's account and remit proceeds. Plaintiff had in its employ as billing and shipping clerk, one Hiatt, and he, through a space of three years, from time to time, embezzled carloads of plaintiff's coal and shipped to defendant for sale for himself, the proceeds to be remitted to him. These shipments amounted in value to more than $4,000 and when plaintiff discovered Hiatt's action, its president demanded payment of defendant which was refused. It was *held* that defendant was guilty of conversion and was liable to plaintiff.

2. ———: **Notes and Stocks: Indicia of Ownership.** Where an owner of property such as notes or stocks, gives his employee possession thereof with every *indicia* of ownership, and the employee transfers to an innocent purchaser, then, on the principle that when one of two innocent persons must suffer by the act of a third person, the loss should be put upon the one who put it in the power of such person to commit the fraud. But that principle does not apply to a coal mining corporation whose billing and shipping clerk ships coal to a commission company for himself, the sale money to be remitted to him.

3. ———: **Estoppel: Burden: Damage.** One charged with conversion by reason of innocently selling an owner's property for the thief who had placed it in such person's hand for sale and who claims that the owner is estopped by reason of leading him to believe that he would not be looked to for payment, and that he therefor did not endeavor to indemnify himself from the thief, must show that he suffered a loss by reason of not making such effort.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

*John J. Campbell* and *Scarritt, Scarritt, Jones & Miller* for respondent.

ELLISON, P. J.—This is an action for conversion in which the judgment was for the plaintiff in the trial court.

Plaintiff is a corporation engaged in mining and shipping coal to market from Pittsburg, Kansas. Defendant is a corporation engaged in the coal business, including the sale of coal on commission and remittance of proceeds to those engaging its services. It had business connection with plaintiff and had served plaintiff in the manner indicated for several years. Defendant's shipping and billing clerk was one Hiatt. He likewise sometimes bought and sold coal for plaintiff, but he had no authority to sell it on consignment; and he had no authority to collect money for sales, nor to endorse checks, nor to sell plaintiff's coal in his own name. Hiatt was, or at least, became dishonest and began to steal or embezzle coal from plaintiff. This appears first in the following letter dated April 15, 1911, to defendants:

"I am billing you today a car of lump coal on conisgnment. This coal comes from a small shaft, but is good clean lump coal and a party asked me to dispose of it, so the only way I knew of was to send it to you. I trust you will handle it so as to save any demurrage, and at best price possible. This car is 7943 N. Y. C. & St. L., 40 ton capacity. Will send you bill as soon as get weights, as party is a little hard up and if you can stretch a point and send me check it will be appreciated. Thanking you in advance, I am, yours truly, C. O. Hiatt."

This was kept up, from time to time, for about three years, until the carloads of coal amounted to $4014.89. All of Hiatt's letters were individual com-

munications, and all of plaintiff's remittances were to him individually.

Hiatt quit plaintiff's employment shortly before his misdeeds were discovered. He admitted his guilt and absconded. Plaintiff's president came to Kansas City and exhibited to defendant's general manager a statement of the cars of coal taken from it by Hiatt and sold for him by defendant. The latter refused to admit liability or to pay.

The evidence showed that when plaintiff's president discovered the loss, he endeavored to get Hiatt to make it good by the assistance of his relatives, but failed. The evidence further shows that when plaintiff's president interviewed defendant's manager and received his emphatic refusal to recognize liability, they separated and that night plaintiff's president called him at his house over the telephone in regard to the matter. They differ as to what was said. Accepting defendant's version as correct, it was a request to defendant's manager to say nothing about the matter discussed between them.

An interesting opinion by Judge BLISS in Koch v. Branch, 44 Mo. 542, demonstrates that no title to personalty can come through a thief. And whoever intermeddles with the owner's right by selling the property is guilty of conversion however innocent he may be. In that case, the instance of an auctioneer is given as an illustration, the statement being that although such agent sells in the usual way with such agents, without knowledge of the theft, or the claim of the true owner, and although he pays over the sale price to the person for whom he made the sale, he is guilty of a conversion. That case has been followed by the Supreme and Appellate Courts of the State to the present time. Therefore, however good defendant's intentions and however innocent it was of Hiatt's pilfering, its legal obligation will not be disturbed. [Gage v. Shepard &

Morse Lbr. Co., 39 N. Y. Supp. 449 (affirmed 158 N. Y. 672) ; Gilman Linseed Oil Co. v. Norton, 89 Iowa, 434; Porges v. Mortgage & Trust Co., 203 N. Y. 181; Rogers v. Dutton, 182 Mass. 187.]

Defendant's defense is that the loss was occasioned "by the default of plaintiff's own trusted employee, whom plaintiff had clothed with authority to pass title to the property by causing it to be billed out in accordance with his directions and also to purchase and dispose of coal *in behalf of the company.*" [Italics ours.] If the facts would justify that statement of defense, no doubt it would be good. But if the trusted agent, not acting for his principal, disposes of the latter's property as his own to a purchaser who pays or remits the sale price to such agent in his own name, it forces a conclusion the reverse of that just stated. And so the learned trial judge submitted the case by an instruction for plaintiff, and we accept the verdict as establishing that fact.

Defendant states that the conceded facts show that either Hiatt's position with plaintiff was such that his knowledge of the transactions "must be imputed to the company, or the company, by reason of placing Hiatt in a position such that he could and did impose upon and mislead defendant into these dealings, extending over a series of years, without detection, and in failing to check his shipments against the record of mine production, was guilty of such negligence that it cannot recover."

The cases of Fairgate Realty Co. v. Drozda, 181 S. W. 398 (not yet officially reported) and National Safe Dep. Co. v. Hibbs, 229 U. S. 391, are cited in support of this statement. The first of these is a decision of our Supreme Court and bears no resemblance to this in its facts, or in the law applicable thereto. There a promissory note and deed of trust were executed in the name of a corporation by two parties, one purport-

ing to be president and the other secretary of the corporation, when others held that place. These persons falsely wrote in the records of the corporation that they had been elected to those offices by the directors and were authorized to borrow money. The note was sold to an innocent purchaser to whom these false entries were shown. The corporation brought suit to cancel the deed of trust. Two of the complaining directors received part of the money realized on the note and the others admitted that they never looked at the record where these falsehoods were recorded, and one of them admitted that he was "ashamed of it." Others knew of the execution of the note, and all knew of the application of a part of the money to improvements for the corporation. In such state of facts, the Supreme Court denied relief. The case, manifestly, is not one of the class to which the one before us belongs.

The second case is founded on a principle invoked by defendant, viz, that "Where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." This case, also is wholly unlike the one under consideration. Kelly, a borrower from a bank, gave as collateral certain certificates of corporation stock issued in his name which recited that it was transferrable by him and each contained an assignment on the back by Kelly with power of attorney to transfer, signed in blank by him. A bookkeeper and assistant note teller's duties, among other things, consisted in delivering to borrowers who had paid their obligations, the collaterals pledged to secure them; but he did not have authority to sell or dispose of such collateral. He asked the proper officer for the Kelly certificates of stock and supposing it was for delivery to Kelly because he had paid his loan, they were delivered to him. But Kelly had not paid and this employee took two of the certificates to a stock broker for sale on his own

account. Being already assigned by Kelly, as above stated, they were taken by the broker and sold, the employee receiving the price obtained. The broker naturally supposed the stock belonged to the employee. The Supreme Court of the United States refused to apply the principle that when the owner of property has lost it by the criminal act of another, he cannot be deprived of his property by an attempted transfer of title to a third person, no matter how innocent the purchaser may be. The court refused to apply that principle because the bank had entrusted its employee with a peculiar article of property, in its nature negotiable, with every indicia of ownership and right to sell for himself.

The present case does not present any feature like that. This plaintiff in no way clothed Hiatt with an appearance of ownership of the coal. He could sell for plaintiff as its agent, but he had no more right to appropriate the coal and sell it as his own and receive the price himself, than a stable man would have to ride off his employer's horse and sell it as his own.

But defendant insists, as a separate proposition, from other considerations, that plaintiff by the conduct of its president in requesting that the matter of Hiatt's embezzlement be not mentioned, led it to believe that no claim would be made against it and thereby to fail to take measures against Hiatt looking to its own reimbursement. We may leave out of view that defendant's president absolutely and finally denied any liability, and absolutely refused to pay plaintiff's demand, and yet reject this defense, for the reason that there was no evidence that defendant suffered any loss by reason of not immediately pursuing Hiatt. The Supreme Court of the United States decided in Leather Manufacturers Bank v. Morgan, 117 U. S. 96, 115, that such right would be regarded as a valuable one, regardless of affirmative evidence of damage, and de-

fendant cites it as bearing out its position. That case was based on the peculiar condition of a bank in its relation to its depositors. But conceding its application, it has not been regarded as the law in this and other States. [Wind v. Bank, 39 Mo. App. 72, 85; McKeen v. Bank, 74 Mo. App. 290; Kenneth Inv. Co. v. Bank, 96 Mo. App. 125.]

After full consideration, we conclude the judgment on the law and the facts was for the right party and it is affirmed. All concur.