DIXIE GUANO CO. v. WESSEL et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

No. 2150.

Principal and agent ⬅181—Principal not liable for theft by agent or for failure in advance of discovery to give notice to those affected.

The principal is liable neither for theft by his agent of his property nor for failure, in advance of discovery, to give notice to those affected by his fraudulent acts, and in this connection knowledge of the agent is not knowledge of the principal.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action by Pedro M. Wessel and others against the Dixie Guano Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

Tazewell Taylor, of Norfolk, Va. (W. R. Ashburn, of Norfolk, Va., on the brief), for plaintiff in error.

Edward R. Baird, Jr., of Norfolk, Va. (Baird, White & Lanning, R. Clarence Dozier, and Joseph D. Deal, all of Norfolk, Va., on the brief), for defendants in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. The defendants in error, plaintiffs in the District Court, instituted their suit at law against the plaintiff in error, defendant below (hereinafter referred to as plaintiffs and defendant), to recover $4,964.40, the value of 110,320 net pounds of nitrate, alleged to have been feloniously stolen from the plaintiffs by W. B. Tredwell, and wrongfully sold and delivered by him to the defendant, and by it converted to its own use, without the knowledge and consent of the plaintiffs, who never parted with their title to said nitrates, and have never been paid therefor.

Plaintiffs were importers of nitrates, and received a large shipment thereof on the steamship Hesperos, at Lambert's Point, Va., which was placed by them through their representative in Jones Storage Warehouse on their account, on or about the 31st of October, 1917. Subsequently, on or about the 24th of December, 1917, two carloads of this nitrate were shipped without the knowledge of the plaintiffs, by direction of said Tredwell, consigned to his own order at Suffolk, Va., and by him sold to the Dixie Guano Company. Plaintiffs had no knowledge of this transaction on the part of Tredwell, or the sale of their nitrates to the defendant, and received no remuneration therefor. Plaintiffs subsequently, in due course of business, by the month of March, 1918, had disposed of all of their nitrate stored in Jones Warehouse, by regular orders of delivery issued through their representative Tredwell, at Norfolk, whom it appears accounted for the sales but made no mention of that to the Dixie Guano Company, the defendant. The sale to the defendant became apparent so far as the plaintiffs were concerned, for the first time when in the summer of 1919 demand was made upon them

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

296 F.—28

by the Du Pont de Nemours Company for the quantity of nitrate contained in the two cars in question; it appearing that Tredwell, who also represented the Du Pont Company, had diverted from that company by means of shifting from its pile of nitrates in Jones warehouse, to that of the plaintiffs' pile therein, a sufficient quantity to make good the Dixie shipment. Upon this condition becoming apparent in August, 1919, plaintiffs indemnified the Du Pont Company for the value of the nitrates thus shifted and diverted.

Defendant duly appeared in the suit, denied liability, filed a plea of general issue, and a special plea raising the question of the right of the plaintiffs to recover, because of their failure earlier to discover and inform the defendant of the illegal acts of their representative. Evidence was adduced by the plaintiffs, the defendant offering no testimony, at the conclusion of which both plaintiffs and defendant moved the court to instruct verdicts in their respective behalves. The court overruled the motion of the defendant, and sustained that of the plaintiffs, and instructed the jury to return a verdict for the plaintiffs for the amount sued for. From this action, the writ of error herein was sued out, six assignments of error being made, though Nos. 4, 5, and 6 are relied upon and relate to the court's action in directing a verdict in favor of the plaintiffs; to the failure to grant the defendant a new trial; and particularly to its action in taking from the jury the determination of whether or not the plaintiffs, in the circumstances, exercised due care in discovering the withdrawal of their nitrates, and to timely notify the defendant to the end that it might protect itself.

There seems to have been no dispute upon the facts in the case as to the relation occupied by Tredwell to the nitrate in question and that he was without authority to sell and dispose of plaintiffs' nitrates. Tredwell's liability in these circumstances, as well as that of the defendant, who was unfortunately imposed upon by his conduct, falls strictly within the ruling of this court in the recent case of Richmond Guano Co. v. Du Pont (C. C. A.) 284 Fed. 803, 808, 809.

The ruling of the District Court covered by the three assignments of error, in taking the question therein presented from the jury, is, in our judgment, free from error. These assignments are based upon the alleged duty of the plaintiffs earlier to have discovered the acts of their agent Tredwell, and to have advised the defendant thereof. This obligation the law did not impose upon them in the circumstances here because the same was predicated upon the supposed liability of the plaintiffs for the failure of their agent to make a report of his fraudulent acts committed against them. The responsibility of a principal for the acts of his agent, ordinarily, do not apply to such a transaction, as it presupposes that the agent engaged in defrauding his principal would make a report of his own unlawful acts. The principal is neither liable for the theft by his agent of his property, or for the failure in advance of the discovery to give notice to those affected by his fraudulent acts. This legal principle is well settled upon reason and authority, and hence there were no facts on which to submit the case to the jury. It is manifest from the undisputed testimony that the plaintiffs acted with the utmost promptness upon the discovery of the fraudulent scheme and conduct of their agent. There was not the slightest suspicion of Tred-

well for some 18 months after the theft, and when the discovery was made, it took a little while to unravel the mystery, and within a period of from 30 to 50 days this suit was instituted.

In American Surety Co. v. Pauly, 170 U. S. 133, 150, 18 Sup. Ct. 552, 559 (42 L. Ed. 977), in considering the liability of a principal arising from the supposed knowledge of an agent, the Supreme Court said:

"Ordinarily a corporation, like any other principal, is chargeable with the knowledge of any facts which are known to its agents; but in this case all these transactions, if there were any transactions of a fraudulent and dishonest character on the part of the cashier, were transactions for the benefit of Collins, and he was a participator in the fraud, and under those circumstances the law does not infer that the agent or the officer will communicate the fact to his principal, the corporation, and under such circumstances the corporation is not bound by his knowledge. So this defense melts away and there is nothing of it whatever."

In Thomson-Houston Electric Co. v. Capitol Electric Co., 65 Fed. 341, 343, 12 C. C. A. 643, 645, Mr. Chief Justice Taft, then circuit judge, aptly states this question as follows:

"Such a presumption cannot be indulged, however, where the facts to be communicated by the agent to the principal would convict the agent of an attempt to deceive and defraud the principal. The truth is that where an agent, though ostensibly acting in the business of the principal, is really committing a fraud, for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it."

In Hart v. Bier (C. C.) 74 Fed. 592, 596, the same question is likewise well stated:

"* * * From the reasons upon which the exceptions to the general rule are maintained, we think it clear that for this case we may safely hold that where an agent participates in illegal transactions or in contracts contra bonos mores, not in the interest of his principal, and not shown to be within the scope of his agency, there is no presumption, in law or otherwise, that the agent communicates to his principal information concerning such illegal transactions or such contracts contra bonos mores."

Also, in Bank of Overton v. Thompson, 118 Fed. 798, 800, 56 C. C. A. 554, 556:

"There are, however, well-settled exceptions to this rule, where notice or knowledge on the part of the agent will not be imputed to the principal, and one of these is 'where the agent's relations to the subject-matter, or his previous conduct, render it certain that he will not disclose it.'"

Reference may also be had to the following cases: Central Coal & Coke Co. v. George S. Good & Co., 120 Fed. 793, 798, 57 C. C. A. 161; Union Central Life Insurance Co. v. Robinson, 148 Fed. 358, 360, 8 L. R. A. (N. S.) 883;[1] Porter v. Foster, 20 Me. 391, 37 Am. Dec. 59; Pittsburgh & Midway Coal Co. v. Lanning-Harris Coal Co., 193 Mo. App. 664, 187 S. W. 263; 31 Cyc. p. 1595; 26 R. C. L. p. 1114, § 54.

The defendant cites quite an array of authority tending to support its contention of the obligation of the plaintiffs to have earlier discovered and advised it of the shortcomings of their agent. These cases, upon close examination, will be found almost without exception to apply to acts of omission on the part of bank depositors to examine and inform banks of errors, or supposed errors, in statements of accounts rendered.

[1] 78 C. C. A. 268.

They do not, in our judgment, apply to transactions of an agent in the circumstances here. Bank statements of the character in question are in effect statements of accounts between parties, and as to which mutual duties and obligations arise, and in respect to which a depositor may well be held bound by his neglect to use ordinary care in discovering errors in his account, which would have become apparent by the exercise of reasonable diligence on his part. Leather Manufacturer's Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; Dana v. National Bank of Republic, 132 Mass. 156.

The judgment of the District Court will be affirmed, at the cost of the plaintiff in error.

Affirmed.