KENNETH INVESTMENT COMPANY, Appellant, v. NATIONAL BANK OF THE REPUBLIC, OF ST. LOUIS, MISSOURI, Respondent.

St. Louis Court of Appeals, August 6, 1902.

1. **Reference of Case: PRACTICE, TRIAL: OBJECTIONS TO REFERENCE OF CASE.** Whether or not a case may be referred over the objections of the parties to a suit must be determined in each case by the pleadings and the issues raised by the parties themselves.

2. **Banks and Banking: ENTRY OF DEBITS AND CREDITS: DEPOSITOR'S BOOK: ACCOUNT: ACCOUNT STATED.** The entry of the debits and credits in a depositor's passbook by a banking institution, striking the balance and then delivering the book to the customer with his cancelled checks, constitutes a rendition of account, and the retention of the book so balanced, by the customer for an unreasonable length of time without objection to the account as rendered, constitutes an account stated.

3. ———: ———: ———: ———. And the burden is on the plaintiff customer to show by a preponderance of the evidence that the checks cancelled and returned to him by the bank were forged by the bookkeeper of the banking institution.

4. **Banks and Banking: DEPOSITOR: BANKER: LEGAL RELATION OF DEPOSITOR AND BANKER.** The relation between a depositor and a banker is that of debtor and creditor and not of bailor and bailee.

5. ———: ———: ———: DILIGENCE. And no degree of diligence exercised by a banker in scrutinizing checks presented to him for payment, in order to detect forgeries of his depositor's signature can avail him to enable him to cast upon the depositor losses sustained by him in the paying out of money on checks purporting to be those of the depositor, but in fact forged.

6. Banker and Depositor: IMPLIED CONTRACT OF BANKER WITH DEPOSITOR. The implied contract between a banker and depositor is such that, in consideration of the latter's lending him such an amount of money, he will pay a like amount to him, or to anyone to whom he may order, by checks from time to time, the burden rests upon the banker to determine, at his peril, whether a check presented to him for payment is the genuine check of his depositor or not.

7. Principal and Agent: NOTICE. The general rule is that notice acquired by an agent in any transaction within the scope of his authority should be imputed to his principal.

8. ———: ———. But there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating.

9. Banker and Depositor: NEGLIGENCE OF DEPOSITOR: LIABILITY OF BANKER. Although a depositor has presumptively acquiesced in his account as rendered by the bank by retaining it without objection, yet where he is able to point out specifically error, mistake or forgeries in the account, he ought to be allowed restitution unless the error, mistake or forgery was induced by his negligence, and to make the restitution would work a special damage to the bank.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

*E. T. Farish* and *C. J. Macauley* for appellant.

(1) The court's action in referring the case upon the application of the defendant and against the protest and objection of plaintiff, was erroneous. Sec. 698, R. S. 1899; Dooley v. Barker, 2 Mo. App. 325; Schmidt v. Rose, 6 Mo. App. 579; Thornton v. Life Ass'n, 7 Mo. App. 544. (2) When the court may refer a case with-

out the consent of the parties, it may act on the evidence reported by the referee and find different conclusions of fact from those reported by the referee. And appellate courts may review findings of fact in cases of compulsory reference. Bond v. Finley, 74 Mo. App. 22; Cahill v. McCornish, 74 Mo. App. 609; Reins v. Lumpee, 80 Mo. App. 203; Wentville Co. v. Walker, 123 Mo. 662. (3) The disputed question of fact was whether the defendant had exercised proper care and skill to detect the forged checks, and the burden of proof of this issue was on the defendant. And unless such issue was found in favor of defendant, the defenses pleaded of settlements of account and estoppel, though proven, would not bar a recovery. Bank v. Morgan, 117 U. S. 122; Bank v. Bank, 91 N. Y. 111; McKeen v. Bank, 74 App. 281. (4) And the finding of the referee on this contention is not borne out by the evidence; but such finding is against the evidence and the weight of evidence. It appearing that the amount ($1,093) represented by the forged checks could not be charged to plaintiff, and that the defendant was still liable to plaintiff for said amount represented by said checks, unless the affirmative defenses pleaded, or one of them, was made out; and as to whether there were statings of account, or there was an estoppel, depended upon the pivotal question, as found by the referee, that plaintiff was chargeable with the knowledge of Chatard, and, therefore, responsible for the failure to discover and give notice to defendant of the forgeries, regardless of the fact that Chatard concealed from plaintiff all such knowledge, these two defenses will be considered together. The view of the law taken by the referee in this matter is erroneous. 2 Morse on Banks and Banking, sec. 473, p. 358; Weisser v. Denison, 10 N. Y. 68; Welsh v. Bank, 73 N. Y. 424; Crawford v. Bank, 100 N. Y. 53.

*Alfred P. Hebard* for respondent.

(1)   The reference in this case, although against the consent of the plaintiff, was entirely proper. Whether a case is a proper one for reference without the consent of the parties must be determined from the face of the pleadings.   And it is immaterial as far as the propriety of a compulsory reference is concerned, that the cause may, at the hearing, be simplified by admissions of the parties.   McCormick v. St. Louis, 166 Mo. 315; Johnson v. Blell, 61 Mo. App. 37; Father Matthew's Society v. Fitz Williams, 12 Mo. App. 445; s. c., 84 Mo. 406; Francisco v. Rowland, 14 Mo. App. 600. (2)   The allegation in defendant's answer that defendant observed due care in the payment of the forged checks was an unnecessary averment, and no issue is raised upon it by a denial thereof in plaintiff's reply. Hudson v. Railroad, 32 Mo. App. 667; Gannon v. Gas Co., 145 Mo. 502.   (3) And the trial court's findings of fact will be greatly deferred to in the appellate court in cases where the evidence is of such a character as to be more readily and clearly understood by the trial court.   Johnson v. Duer, 115 Mo. 366; Chapman v. McIlwrath, 77 Mo. 38; Bank v. Murray, 88 Mo. 191; Chouteau v. Allen, 70 Mo. 290.   (4)   If there is any issue at all as to the care used by the defendant, it is as to the care which was used in the payment of the forged checks, and evidence about the payment of some other check, whose payment is not in issue, is evidence simply of a collateral fact, absolutely irrelevant and of no probative force as to the care which was used in the payment of the forged checks.   Chamberlain v. Mo. Electric Light & Power Co., 158 Mo. 1; Goble v. Kansas City, 148 Mo. 470; Coale v. Railroad, 60 Mo. 227; Farrar v. Snyder, 31 Mo. App. 93; Hayes v. Railroad, 15 Mo. App. 584.   (5)   The relation between a depositor and his bank is that of debtor and creditor.   Bank v. Morgan, 117 U. S. 96; Wind v. Bank, 39 Mo. App. 72; McKeen v. Bank, 74 Mo. App. 281.   (6)   A corporation must guarantee the honesty of its own servants and

not thrust that burden on the public.   Carrol v. Railroad, 14 Mo. 490.

The substance of the petition is that plaintiff (a corporation) long prior to May, 1894, and from time to time thereafter, deposited money with the defendant bank on general account subject to be drawn out by plaintiff's checks; that on the said twenty-fourth day of May its passbook was balanced by the bank and returned to plaintiff showing a balance to plaintiff's credit of five hundred and seventy-nine dollars and fifty-four cents; that from the said twenty-fourth day of May to September 24, 1894, plaintiff made various deposits with the defendant aggregating twelve thousand one hundred and seventy-two dollars and fifty-four cents, which with the balance of May 24 made a total of twelve thousand seven hundred and fifty-two dollars and eight cents to plaintiff's credit; that against this credit plaintiff drew its checks aggregating nine thousand five hundred and fifty-eight dollars and seventy-three cents, leaving a balance to plaintiff's credit of three thousand one hundred and ninety-three dollars and thirty-five cents; that between said twenty-fourth day of May and September 24, 1894, the defendant, without the authority, consent or knowledge of plaintiff, charged against said account at various times as having been paid by it to plaintiff, various sums aggregating ten hundred and ninety-three dollars, no part of which was received by plaintiff, and that the defendant though often requested has refused to credit plaintiff's account with the said sum of ten hundred and ninety-three dollars erroneously charged against it or to pay said sum to plaintiff on demand.

The answer is a general denial and the following pleas of new matter:

First.   That the plaintiff from November, 1893, to

November, 1894, had at various times deposited money with plaintiff and drew upon defendant divers checks, all of which were duly paid; that there was over two hundred items of debit and credit in the account; that on May 24, 1894, the account was stated between them and a balance found due plaintiff from defendant of five hundred and seventy-nine dollars and fifty-four cents, which was carried forward to plaintiff's credit; that on June 13, 1894, plaintiff and defendant stated the account when it was ascertained that the balance to plaintiff's credit was fifteen hundred and six dollars and seventy-nine cents; that on August 20, 1894, the account was again stated between plaintiff and defendant when it was ascertained that plaintiff had overdrawn its account by eleven cents; that on September 3, 1894, plaintiff and defendant again stated the account and it was ascertained that the defendant owed the plaintiff five hundred and seventy dollars and fifty-nine cents, which was carried forward to plaintiff's credit; that about September 24, 1894, the account was again stated and it was ascertained that there was a balance of twenty-one hundred dollars and thirty-five cents to plaintiff's credit and that about October 9, 1894, the account was again stated and a credit of five thousand six hundred and eight dollars and fifty-seven cents was carried forward to plaintiff's credit and that on November 2, 1894, the account was again stated when it was ascertained that defendant owed plaintiff the sum of two hundred and three dollars and fifty-seven cents, which sum was paid to plaintiff by defendant on November 14, 1894.

Second. For new matter constituting a further defense the answer sets forth that plaintiff for a ground for its suit claims that one Frank J. Chatard, who was in its employ from April to October, 1894, as its book-keeper, between the twenty-fourth day of May and the thirteenth day of June, 1894, forged a check of plaintiff on defendant for seventy-eight dollars and fraudulently procured the defendant to pay it, and plaintiff further

claims that between June 13 and August 20, 1894, Chatard at divers times forged the name of plaintiff to fifteen different checks upon defendant aggregating the sum of six hundred and ninety-five dollars, which he fraudulently procured the defendant to pay, and that between August 20 and September 24, 1894, Chatard forged the name of plaintiff to divers other checks, which he fraudulently procured the defendant to pay, aggregating three hundred and twenty dollars; that during all these periods Chatard was the bookkeeper and had charge of the bank passbook and was entrusted with the keeping of plaintiff's general accounts and of its deposit account with the defendant bank, and that the greater number of said alleged forged checks have been destroyed and that defendant has no means of knowing whether or not they were forged; that on June 13, 1894, when defendant balanced the plaintiff's passbook it returned said book with all of plaintiff's paid checks then in its possession; including the alleged forged check for seventy-eight dollars, to the plaintiff and that plaintiff then and there examined said passbook and said checks and then and there ascertained that Chatard had forged the check for seventy-eight dollars and that it thereupon became its duty to notify the defendant of said forgery of the check that the defendant might recover the amount of said check from Chatard and be put upon its guard against future forgeries by him, but that plaintiff failed to give any such notice.

The answer further alleges that if plaintiff did not in fact examine its passbook and return the cancelled checks, it was its duty to do so within a reasonable time and if it had done so it would have discovered the alleged forgery in time to notify the defendant so that it might have recovered the amount of the forged checks and avoided the payment of his forged checks in the future, and alleges in the alternative that plaintiff did examine its books and discover the forgery or that it negligently failed to make the examination and that the

non-discovery of the forgery was due to its neglect to make the examination and alleges the exercise of due diligence and care on its part in the payment of the alleged forged checks and that it was induced by the neglect of the plaintiff to notify it of the forgery of the check for seventy-eight dollars, to pay checks of subsequent dates alleged to have been forged by Chatard and that plaintiff should be estopped by its conduct to maintain the action.

In the third paragraph of the answer defendant tenders the amount of the check for seventy-eight dollars with legal interest and all costs of the suit to date of filing the answer.

The reply admits the balancing of plaintiff's passbook by defendant on May 24, June 13, August 20, September 3, September 24, October 9 and November 2, as alleged in defendant's answer, admits that the balances shown by the book were as alleged in the answer and admits the payment of the balance of two hundred and three dollars and fifty-seven cents as shown by the balance stated by plaintiff on November 2. But alleges that the balances after the settlement of May 24 were incorrect in this, that defendant in making up its account with plaintiff had erroneously charged plaintiff with the sum of ten hundred and ninety-three dollars which plaintiff had not received and for which it had drawn no check or checks against its account after May 24, 1894. Admits that it claims that Chatard, from the month of April to September 24, 1894, forged checks aggregating ten hundred and ninety-three dollars as alleged in the answer and that the number of said checks were twenty-one. Admits that during all that time Chatard was the plaintiff's bookkeeper and was entrusted with the keeping of its general accounts as well as its deposit account with the defendant; admits the destruction of most of the forged checks and that they could not be produced, but denied each and every other allegation of new matter in the answer.

On motion of the defendant, over the objections of the plaintiff, the cause was referred to John W. Dryden, Esq., as referee. The referee heard and reported the evidence to the court together with his findings of the law and the facts. His conclusions are as follows:

"I therefore am led to conclude that under the law of the case, and on the facts as found, the issue as to the second affirmative defense pleaded in the answer must be found for defendant, and plaintiff held to be estopped to recover of defendant any part of the sum sued for by it, except said $78 admitted by the answer, and interest thereon from October 8, 1894, the time of filing the petition herein, and I accordingly so find."

Plaintiff filed numerous exceptions to the report of the referee. The court overruled the exceptions, adopted the report of the referee and rendered judgment upon his findings. A motion for new trial proving of no avail plaintiff appealed.

BLAND, P. J.—Whether or not a case may be referred over the objections of one or both of the parties to a suit, must be determined in each case by the pleadings and the issues raised by the parties themselves. The Father Matthew Society v. Fitzwilliams, 84 Mo. 406; Johnson v. Blell, 61 Mo. App. 37.

A critical examination of the pleadings in this case discloses the following admitted facts:

First. Plaintiff was a customer of the defendant bank from November, 1893, to November, 1894, and from time to time made deposits on general account with it and from time to time drew its check against its deposits.

Second. That from May 1 to about September 24, 1894, Frank J. Chatard was plaintiff's bookkeeper and had charge of plaintiff's deposit account book with the defendant.

Third. That on May 24, June 30, August 20, September 3, September 24, October 9 and November 2,

1894, defendant balanced the plaintiff's passbook and returned it to plaintiff's authorized agent (Chatard), together with all the checks cancelled which had been drawn against the account, whether genuine or forged; that assuming all the checks to have been genuine, the several balances as ascertained and shown on the passbook were true and correct; that the defendant did not, prior to September 24, object to the balances shown on its passbook as ascertained by the defendant, nor object to any of the checks drawn against the account which were cancelled and returned with the passbook prior to September 24.

Fourth. That the amount demanded by plaintiff (ten hundred and ninety-three dollars) was represented by checks which it alleged to have been forged by the bookkeeper, Chatard.

In respect to the account, the only issue of fact to be tried was whether one or more, or all of the twenty-one alleged forged checks were in fact forged. It is not denied that they were paid by the bank and that they aggregated the amount in dispute. Other issues collateral to this issue were involved, but were not such as to authorize a reference of the case. The fact that the twenty-one checks were forged was not seriously controverted by the defendant, yet the pleadings are in such form as to require the plaintiff to prove them to be forgeries. To say that the investigation of this issue required the examination of a long account on either side, would be a gross misapplication of the letter and spirit of section 689, Revised Statutes 1899, which authorizes the trial court to refer a case "when an issue of fact shall require the examination of a long account on either side."

The reply admits the writing up of plaintiff's passbook at the several times pleaded in the answer and the return of the book with the cancelled vouchers to the plaintiff's bookkeeper, and tacitly admits that plaintiff made no objections to the balances found and stated by

defendant prior to the posting made on September 24.

It has been here held and elsewhere that the entry of the debits and credits in a depositor's passbook by a banking institution striking the balance and then delivering the book to the customer with his cancelled checks, constituted a rendition of account, and that the retention of the book so balanced by the customer for an unreasonable time without objection to the account as rendered, constitutes an account stated. McKeen v. Bank, 74 Mo. App. (St. L.) l. c. 288, and cases cited; Critten v. Chemical Nat'l Bank, 171 N. Y. 219; Schoonover v. Osborne, 108 Iowa 543; Benton Co. Bank v. Walker, 85 Iowa 728; Shipman v. State Bank, 126 N. Y. 318; Harley v. Eleventh Ward Bank, 76 N. Y. 618; Dingley v. McDonald, 124 Cal. 90. The account being by implication a stated account, it was prima facie evidence of its correctness. Perkins v. Hart, 11 Wheat. 237; Hanson v. Jones, 20 Mo. App. (St. L.) 595; Mo. Pac. R'y Co. v. Com. Co., 71 Mo. App. (K. C.) 299; Murray v. Toland, 3 John. Ch. 569; Wild v. Jenkins, 4 Paige 481. And the burden was on plaintiff to show by a preponderance of the evidence that the checks alleged in its reply to be forged were in fact forged by its bookkeeper, Chatard.

The evidence is that C. H. R. Davis was the president of the plaintiff corporation and signed all the checks drawn by it against its deposit account with defendant; that the body of these checks were made out by Chatard and the name of the plaintiff corporation stamped under them with a rubber stamp prepared for that purpose and kept hanging up at Chatard's desk. After the checks were filled out and stamped, Davis, would append his official signature immediately following the stamped impression of plaintiff's corporate name.

It is clearly shown by the evidence that sometime between the twenty-fourth day of May and June 13, 1894, Chatard forged Davis's name to a check prepared

in the usual way for seventy-eight dollars and presented it to defendant's teller, who not suspecting the forgery, paid it to Chatard. That between June 13 and August 20, 1894, Chatard forged Davis's name to fourteen other checks and presented them, with one other check for fifty dollars bearing no signature, to the defendant bank for payment from time to time, and that they were paid by the defendant's teller in good faith. The aggregate amount of these checks was six hundred and ninety-five dollars. Between September 3 and September 24, Chatard forged the name of Davis to five other checks aggregating three hundred and twenty dollars which he presented to and collected of defendant bank. The aggregate amount of the fraudulent checks was one thousand and ninety-three dollars, the exact amount in controversy.

It further appears from the evidence that the forged check of seventy-eight dollars was included in the statement of the account made by defendant and delivered with the passbook and other cancelled checks to Chatard about June 13, 1894. Chatard abstracted the forged check from the genuine ones and destroyed it. The fourteen other forged checks cashed by Chatard between June 13 and August 20, together with the fifty-dollar check bearing no signature, were included in the various balances struck by defendant on plaintiff's passbook between these dates, were marked cancelled and delivered with the passbook with other cancelled checks to Chatard who abstracted and destroyed the forged ones. To cover up his forgeries Chatard tampered with plaintiff's account-books and with the stubs on its checkbook. No officer, agent or employee of plaintiff examined the passbook while it was entrusted to Chatard other than Chatard himself, and hence had no knowledge or information in regard to the forgeries until about September 24, 1894. About the latter date Chatard was unable to attend to his duties on account of sickness and Davis took the passbook to the bank to be

written up and balanced. After it was written up and balanced the five forged checks drawn between August 20 and September 3 came into the possession of Davis and were at once discovered to be forgeries. Plaintiff immediately employed an expert accountant to examine its books of account. This accountant, after several weeks labor and search, discovered and brought to light the other forgeries.

The learned referee found as a fact that:

"An examination by Mr. Davis, president of plaintiff, of said passbook entry and returned checks, after the delivery of them by defendant to Chatard, and a comparison of said checks with the entries in the checkbook, if made before Chatard's erasure of the $78 credit item, would have led at once to the discovery of the $78 forgery, and, if made after such erasure, to the discovery of an error of $78 in balancing. No such examination was made by any of plaintiff's officers prior to September 24, and no knowledge or notice of the existence of the incorrectness of the account, and of the said forgery of said $78 check, came to any of the officers or agents other than Chatard until September 24, 1894, or later."

And reported the following as his conclusions of law which the trial court adopted and which may therefore be taken as the opinion of the trial judge as the law of the case, to-wit:

"The relation between a depositor and a banker is that of debtor and creditor, and not of bailor and bailee. And, that being true, it follows that no degree of diligence exercised by the banker in scrutinizing checks presented to him for payment, in order to detect forgeries of his depositor's signature, could avail to enable him to cast upon the latter losses sustained by him in the paying out of money on checks purporting to be those of the depositor, but in fact forged. The implied contract between him and depositor being in fact that, in consideration of the latter's lending him such

an amount of money, he will pay a like amount to him, or to anyone to whom he may order, by checks from time to time, the burden rests upon him to determine, at his peril, whether a check presented to him for payment is the genuine check of his depositor or not. As against the debt he owes the creditor for the money loaned him, he can claim no credit, except for moneys he has paid to him, or to some one to whom he has ordered him to pay. If he pays to anyone else, then he merely pays his own money at his own risk, and can not charge the depositor for it.

"All this is well settled law, about which there is no room for question. McKeen v. Boatmen's Bank, 74 Mo. App. 281-287; Knecht v. U. S. Saving Investment Co., 2 Mo. 563-564; Leather Mfrs. Bank v. Morgan, 117 U. S. 106; Phoenix Bank v. Risley, 111 U. S. 127; Marine Bank v. Fulton Bank, 2 Wallace 252.

"It appearing that, at the commencement of this suit, the defendant had received of plaintiff $1,093 of moneys deposited with it, primarily the plaintiff would be entitled to recover said amount unless the affirmative defenses pleaded in the answer, or one of them, has been made out.

"First. As to the defense of the divers statings of the account between plaintiff and defendant:

"As to this defense, I am of the opinion that there were statings of the account between the parties on June 13, August 20, and September 3, 1894, such as are alleged in the answer; also, that by such stating the balances of the account were found and settled between them at the several amounts there alleged.

"The balancing up of plaintiff's passbook, and returning of it and the paid checks to its bookkeeper, Chatard, at the several times mentioned, and the setting forth therein, as balances found, the said several amounts, together with the retaining of said book without any objection to said balances by plaintiff, or any of its officers or agents, until September 24, 1894,

amounted, under the well-known rule in respect to accounts between merchants and customers, as well as others, to settlements, or statings of the account, which, until set aside for fraud, accident or mistake, would be binding on the parties. McKeen v. Bank, 74 Mo. App. 288.

"Second. As to the second affirmative defense, namely, that, by reason of the particular facts alleged therein, plaintiff is estopped to claim of defendant the $1,015, or any part thereof: That a depositor in a bank, where the bank balances up his passbook and returns it to him with the paid checks as vouchers to the credits taken by him therein, owes to the bank the duty of examining the book and checks with reasonable care, and within a reasonable time, for the purpose of learning if the account as stated is correct, and if the checks returned are genuine or not; and, in case of his learning of any such checks being forged, the further duty of notifying it thereof, within a reasonable time, seems to be settled by two decisions of the St. Louis Court of Appeals in the case of Wind v. Fifth National Bank et al., 39 Mo. App. 72, and McKeen v. Boatmen's Bank, 74 Mo. App. 281.

"The same doctrine has been held by a number of other courts of this country, including the United States Supreme Court. And further, that where, in case of an omission of such duty, the bank is thereby damaged, or misled to its prejudice, or placed in a worse position, then the depositor will be held liable to make good such loss to the bank, or to be estopped to claim of it any sum which, but for such omission, it would not have paid out, seems also to be held as law by the decisions of said Court of Appeals, and those of other courts in said cases cited.

"Under the facts found, the defendant was certainly prejudiced by plaintiff's omission to promptly discover, and notify it, that the check for $78, paid by

it to Chatard, and charged against it in the balancing of the passbook, made June 13, was a forgery.

"But for such omission it would have been put on its guard, and would not have paid the subsequent forged checks aggregating $1,015 drawn by Chatard and presented to and paid by the bank prior to September 24. This being so, it would seem plain that plaintiff should be estopped to recover of defendant the $1,015 in dispute, provided it be held that its said omission was a negligent one and in breach of the duty, which, under the decisions cited, it owed to the defendant.

"Under the facts found, then, was the omission a negligent one or not?

"The solution of this question depends largely upon the effect to be given to the acts and knowledge of plaintiff's bookkeeper, Chatard, in respect to his examination of the passbook, and paid checks, returned to him with the balancing of June 13.

"The findings show that, immediately upon receipt of the passbook and checks, he examined them, and learned thereby of the error of $78 in the account, and its cause, and instead of disclosing it at once to the president, or other managers of plaintiff, as was his duty, set about to conceal from them its existence, and of evidence of its forgery.

"Had he acted differently towards his employers and called their attention to this forgery, it is to be presumed that they would have at once notified defendant thereof, and the subsequent loss by payment of like checks would not have happened. If the knowledge of erroneous credit, acquired by him from the examination of the passbook, and returned checks, was the knowledge of plaintiff, whose agent he then was, and if his omission to call attention to such error was its omission, or a thing for the consequence of which it could, as between it and defendant be held responsible, there then remains no room for the doubt that it was guilty of negligence.

"But was the plaintiff, under the circumstances, chargeable with the knowledge of Chatard, and responsible for the failure to discover and give notice to defendant of the forgery, regardless of his having concealed from it all that he had learned from an examination of the book and returned checks?

"This question is one as to which there is considerable conflict of authority, and, upon reason, a good deal of ground for doubt. It does not appear to have been passed on in any decision of our own appellate court, and is, therefore, an open one in this State. But with the consideration that I have given to the matter I have concluded, both upon reason and authority, that it should be answered in the affirmative.

"I do not think that the rule does not apply because the agent of plaintiff happened to be the forger himself, but, by reason of the crime he had already committed towards the bank, was interested not to communicate to plaintiff what he knew in the course of his performing it.

"And while it is true, as contended by plaintiff, that the act of Chatard in forging the check was entirely outside of the course of his employment, and that therefore his knowledge of the check being forged, arising from the fact of his having forged it, can not be imputed to plaintiff, yet his subsequent receiving and examining the passbook and checks was within the course of his employment and his knowledge derived in that way, which would be entirely outside of and additional to that derived from his original act of committing the forgery itself, would stand on a different basis.

"Of the latter the plaintiff would be held to have notice; of the former it would be held to have known.

"It then being determined by me that plaintiff should be held chargeable on June 14 with the knowledge that Chatard on that day of the forgery of the check for $78, and the consequent error of that amount in the account as stated in the passbook on June 13, it

follows that plaintiff was negligent in omitting to notify defendant prior to the payment by it of any of the other forged checks aggregating $1,015. And being so negligent, then, unless defendant also was guilty of negligence in failing to discover the forgery of said other checks before paying them, through want of ordinary care, then it must be estopped to recover of defendant on account of such last-named checks.

"As noted by plaintiff in its brief, it was held by the Supreme Court of the United States, in Leather Mfrs. Bank v. Morgan, 117 U. S. 122, that a bank could not complain of a depositor's failure to examine his account and give notice of a forged check, if it had itself not used proper care and skill in detecting the forgery before paying such check. This limitation on the defense of estoppel by the bank as against a careless depositor, is reasonable, and may be conceded."

It will be observed that the referee and the trial judge held the law to be that the knowledge of Chatard that the forged check of seventy-eight dollars charged to plaintiff's account in the settlement of June 3, 1894, should be imputed to the plaintiff and that its failure to notify the defendant of the forgery, estopped it to claim reparation for checks thereafter forged by Chatard. The law of the case as found by the referee and adopted by the trial court finds support in First National Bank of Birmingham v. Allen, 100 Ala. 476; Dana v. First National Bank of the Republic, 132 Mass. 156, and in Bank v. Morgan, 117 U. S. 97. Unquestionably the general rule is that notice acquired by an agent in any transaction within the scope of his authority should be imputed to his principal. But there are exceptions to the rule, one of which is stated as follows in Innerarity v. Merchants' National Bank, 139 Mass. 332; "While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in

case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating.'' This ruling was adopted by our Supreme Court in Hickman v. Green, 123 Mo. 165, and was approvingly cited in Bank v. Lovitt, 114 Mo. 519, and the Lovitt and Hickman cases are approvingly cited in Traber v. Hicks, 131 Mo. l. c. 192.    On the authority of the Innerarity case and other cases cited in footnote No. 2, Mechem formulated section 723 of his work on Agency, wherein he states, in part, as an exception to the general rule: ''This presumption (that the agent has communicated his knowledge to the principal) will not prevail where it is certainly to be expected that the agent will not perform this duty, as where the agent, though nominally acting as such, is in reality acting in his own or another's interest, and adversely to that of his principal.''

In Weiser v. Denison, 10 N. Y. 68, the depositor entrusted the examination of accounts to a confidential clerk who forged his employer's name to the checks and procured their payment by the bank.    The clerk concealed the forgery from his employer.    The passbook had been written up several times before the forgeries were discovered.    It was held that the clerk's concealment of the forgeries was a continuation of his fraud and imposed no more obligation on his employer than did the receipt of the money in the first instance.    The same ruling was had in Welch v. German-American Bank, 73 N. Y. 424; Henry v. Allen, 151 N. Y. 1; Bienenstok v. Ammidown, 155 N. Y. 47.

In Hardy v. Bank, 51 Md. 562, it was held that the knowledge of the agent who did the forging can not be imputed to the principal.    To the same effect are Mackintosh v. Eliot Bank, 123 Mass. 393, and Peoples' Sav. Bank v. Cupps, 91 Pa. 315.

In United States Security Co. v. Bank, 185 Pa. St. l. c. 600, speaking in reference to the general rule, the court said: "Of the general rule there is no question. But in this case the agent, through notice to whom knowledge is to be imputed to the plaintiff, was himself the author of the fraud, and the question therefore arises whether the legal rule is applicable under such circumstances. On this question the cases are not entirely in harmony. We had occasion in Gunster v. Scranton Power Co., 181 Pa. 327, to review and consider them, and we then held that the weight of authority, as well as of sound reason, was against the application of the rule in such a case. The rule, as there said, is founded on the duty of the agent to communicate all material information to his principal and the presumption is that he has done so but no agent who is acting in his own antagonistic interest, or has committed a fraud by which his principal is affected, can be presumed to have disclosed such fraud. It would be contrary to all experience of human nature, on which presumptions are founded."

Chatard was engaged in a fraudulent scheme to obtain money on forged checks of his employer. To have disclosed the payment, cancellation and return of these forged checks would have prevented the consummation of his scheme and it should not be presumed that he would inform his employer of his crime, and we hold that his knowledge of the forgery should not be imputed to the plaintiff.

The relation of the bank and of the plaintiff as its depositor was that of debtor and creditor. Bank v. Riley, 111 U. S. 125; State v. Reid, 125 Mo. 43; Morgan v. Bank, and McKeen v. Bank, supra. And it was bound to know the signature of plaintiff to checks drawn against the deposit account and when it paid out money on the forged checks of Chatard it paid out its own money and not the money of plaintiff. McKeen v. Bank, supra; First Nat'l Bank of Washington v. Whit-

ton, 94 U. S. 347; Frank v. Bank, 84 N. Y. 213; Manu-
facturers' Nat'l Bank v. Barnes, 65 Ill. 59; Atlanta
Nat'l Bank v. Burke, 81 Ga. 597.  And the defendant
must bear the loss even though it could not have de-
tected the forgery by the exercise of ordinary care; un-
less after the payment of the first of the forged checks
and its cancellation and return to plaintiff with the pass-
book written up and balanced on June 13, 1894, plain-
tiff's neglect to examine the passbook within a reason-
able time, prevented it from discovering the forgeries
and giving defendant notice thereof.  Primarily the loss
should fall on the defendant; to shift its liability to
plaintiff, defendant must show that it was not guilty
of negligence in paying the forged checks and that the
plaintiff owed it a duty which if it had discharged the
loss would not have occurred.  The duty of plaintiff
was to make an examination of its returned passbook
and cancelled vouchers within a reasonable time after
June 13, 1894, and to give defendant notice of the for-
gery if it could or would have been discovered had the
examination been made.   Bank v. Morgan, supra; Bank
of United States v. Bank of Georgia, 10 Wheat. 333;
Reading v. Woods, 45 Cal. 426; Weinstein v. Bank, 69
Tex. 38; Bank v. Ricker, 71 Ill. 439; Critten v. Chemical
Nat'l Bank, 171 N. Y. supra; Dana v. Bank of the Re-
public, Harley v. Bank, and McKeen v. Bank, supra.

Following Bank v. Morgan, supra, and a prior
Pennsylvania case (185 Pa. 586) the Supreme Court of
that State in the case of Myers v. Bank, 193 Pa. St. 1,
held that: "Where a depositor of a bank entrusts to a
confidential clerk the care of his bank account and the
duty of verifying the settlements of his bankbook, and
the clerk forges checks, and when the depositor's checks
are returned by the bank, abstracts the forged checks
and reports to his employer that the settlement is cor-
rect, and there is no evidence that the bank was negli-
gent in paying the forged checks, and it appears that
if the depositor had verified the settlement himself he

would have discovered the fraud, the depositor, while not chargeable with the knowledge of his clerk that the latter had committed the forgery, is clearly responsible for the acts and omissions of his clerk in the course of the duties with which he was entrusted, viz., to receive the checks, and he can not recover from the bank the loss which he sustained.''

In Wind v. Bank, 39 Mo. App. 72, after a careful review of the authorities the court, through THOMPSON, J., said: ''In view of the foregoing authorities, and restraining our decision to the facts of the case before us, we have no difficulty in holding that, where a customer of a banker receives his book from his banker balanced, with his checks returned cancelled, as vouchers to the entries made by the banker, and there are circumstances within his knowledge at the time from which, by the exercise of reasonable care and inquiry, he would have been able to ascertain that some of the checks so returned were altered or forged, and he fails to exercise such reasonable care and inquiry, and the bank thereby suffers loss, or is placed in a worse position than it would have occupied if such inquiry had been made, and the facts ascertained and communicated to it, within a reasonable time—the customer has lost his recourse against the bank. Indeed, we regard the case, where there are facts within the knowledge of the customer sufficient to put him on inquiry, provided he proceeds as a reasonably careful, prudent and honest man, and where the inquiry, if made, would disclose the fact—as tantamount to a case where the person has actual knowledge; and we understand this to be a general principle of law.'' The court then proceeded to disapprove the doctrine of the Morgan case, in so far as it holds that prejudice to the bank is to be presumed, and held that there was no such presumption of loss and that it was incumbent on the bank to prove the loss in order to estop the depositor from recovering from the bank the amount paid by it on the forgery. To the

same effect is Critten v. Chemical Nat'l Bank, supra.

It seems to us that the Wind case is supported by the better reason and is more consonant with sound equity. The estoppel, founded on negligence, should not work injury to the depositor unless it appears that his negligence has occasioned special damage to the bank. The legal relation between the bank and its general depositor is that of debtor and creditor and notwithstanding that the depositor has presumptively acquiesced in his account as rendered by the bank by retaining it without objection, yet when he is able to point out specifically error, mistake or forgeries in the account, he ought to be allowed restitution unless the error, mistake or forgery was induced by his negligence and to make the restitution would work a special damage to the bank.

In respect to the fifty-dollar check which was not signed, it may be well enough to remark that the payment of it in the shape it was in, was negligence *per se* and the bank in any event is liable for the amount so paid.

For the reasons herein stated the judgment is reversed and the cause remanded. *Barclay,* and *Goode, JJ.,* concur.