SALLIE C. DEMPSEY, Appellant, v. TOM B. McGINNIS, Respondent.

St. Louis Court of Appeals. Opinion Filed January 6, 1920.

1. **PARTNERSHIPS: Settlement Agreement Between Partners: Account Stated Distinguished From Settled Account.** An agreement between partners concerning previous transactions as partners in the practice of law, fixing the amount due in respect to such transactions, written, examined and signed by the parties, whereby one of the partners promised to pay the balance shown to be due from him to the other partner, was an account stated and not a settled account, as that term is generally understood, for the reason that this balance was not in fact paid.

2. **ACCOUNT STATED: Surcharge: Equity: Meaning of Surcharging an Account.** To surcharge an account in equity practice means to prove the omission of an item from an account which is before the court as complete, which should be inserted to the credit of the party surcharging.

3. ————: ————: **Action at Law: Right to Surcharge Account: Pleading.** The right to surcharge an account is vouchsafed to the defendant in an action at law when pleaded.

4. ————: ————: **Pleading: Evidence: Omitted Items Due to Fraud, Accident or Mistake.** In an action on an account stated, in order to surcharge the account, it was necessary for the defendant to allege and prove that the items in question were items which properly should have been incorporated in the account stated, and were not so incorporated because of fraud, accident or mistake.

5. ————: **Prima Facie Correct: No Estoppel: May Be Rebutted.** A stated account is only prima facie correct, does not create an estoppel, but affords strong presumptive evidence which may be rebutted, stronger, of course, where the items are cast up by the respective parties and submitted to the other of them, and signed by each.

6. **PARTNERSHIPS: Evidence: Showing of Proper Payments: Burden of Proof.** In an action upon an account stated, same being a written agreement between partners concerning previous transactions in the practice of law, fixing the amount due in respect to such transactions, etc; as to certain cases set forth therein, upon showing receipt by one partner of fees in those cases, the burden would then be upon plaintiff to show payment of one-half thereof to the other partner, because as to those items there was no surcharge of the account as they were incorporated in the account stated.

7. ————: **Attorneys: Not Required to Divide Fees as Receiver With Partner.** In an action on an account stated between law partners, etc., where there is neither pleading nor proof of a specific agreement to divide all moneys earned by each of the partners and neither the fees received from nor the pendency of a receivership matter were set out in the account stated, etc., and the fees of the receiver were allowed for services rendered as an officer of the court, commencing at a period antedating the formation of the partnership, and such fees were allowed him in his individual capacity as receiver and not as an attorney, and the legal services were to be performed by the receiver's attorneys, etc., the fees received as receiver were such an acquisition of moneys by a partner as did not lie within the purview of a contract for the practice of law.

Appeal from the Circuit Court of Pike County.—*Hon. Edgar B. Woolfolk,* Judge.

REVERSED AND REMANDED.

*J. E. Thompson* and *Pearson & Pearson* for appellant.

(1) (a) An account stated is an agreement and acknowledgment that a certain sum of money or balance is due one of the parties and an express or implied promise to pay it, and is conclusive and can only be challenged for fraud or mistake. Marmon v. Waller, 53 Mo. App. 610, 614; Decker v. School District No. 2101, Mo. App. 115, 118; Grocery Co. v. Hotel Co., 183 Mo. App. 429, 435-6. (b) An account stated is conclusive between the parties, unless some fraud, mistake or omission is shown. Marmon v. Waller, 53 Mo. App. 614; Wonderly v. Christian, 91 Mo. App. 158, 168-9; McKeen v. Bank, 74 Mo. App. 281, 291; Vogel v. Kennedy, 127 Mo. App. 228, 235; Com. Elec. Sup. Co. v. Meisenberg, 85 Mo. 337, 340. (c) Under an account stated the presumption is that all previous dealings between the parties relating to the subject-matter of the account are adjusted. Pickle v. St. L. C. & C. Assn., 10 Mo. App. 191, 194-5. (d) When partners have executed and signed an instrument of writing (purporting to be an account stated) settling and adjusting their differences, after the dissolution of the partnership, it cannot be set aside in equity, except on an allegation in defendant's answer that such settlement was procured by fraud or mistake; partners have a right to settle their own affairs, on mutual agreement and on terms satisfactory to themselves, and such settlement becomes a finality, until set aside by a proper proceeding. Bingham v. Tinsley, 149 Mo. App. 467, 480; Silver v. Railroad, 5 Mo. App. 385-6; same cases affirmed 72 Mo. 194. One partner cannot recover from another in an action at law a balance owing on a firm account, unless plaintiff has pleaded and proved a settlement showing such balance or an agreement admitting the correctness of the claim. An unsettled partnership balance should be reached by bill in equity praying an account.

Scott v. Caruth, 50 Mo. 120; Day v. Stafford, 128 Mo. App. 438. The remedy of one partner against another is a remedy strictly in equity. One partner cannot maintain an action at law against another partner, in respect to partnership matters, until after a settlement between them of the partnership accounts and the striking of a balance. Newberger v. Friede, 23 Mo. App. 631, 636. (2) The trial court erred in allowing Witness Fitzgerrell to testify concerning alleged fees in either the receivership case, or in the case of Bonham-Freeman v. St. Louis & Hannibal Ry. Co.; neither of which cases were referred to, nor formed any part of the account stated. (3) The court committed error in giving the defendant's instructions Nos. one and two; by which said instructions the court authorized the jury to determine whether or not any fees collected from the receivership case or the case of Bonham-Freeman v. Ry. Co. belonged to the partnership of Dempsey & McGinnis. (4) The court committed error in refusing plaintiff's instructions two, three, four, five, six and seven; said instructions two and six, inclusive, related to the evidence as to fees collected in the receivership case, and in the Bonham-Freeman case.

*John S. Fitzgerrell* and *Hostetter & Haley* for respondent.

(1) Defendant specially pleaded the matter upon which he relied to surcharge the account, and any proof of payment within the pleadings post-dating the account stated is competent. An account stated does not create an estoppel, and neither a stated nor a settled account is conclusive, but simply affords strong presumptive evidance which may be rebutted. Brown v. Kimmel, 67 Mo. 430; State v. Roberts, 62 Mo. 388; Marion County v. Phillips, 45 Mo. 75; Union Electric Lt. Co. v. Surgical Sup. Co., 122 Mo. App. 631; Kenneth Inv. Co. v. National Bank Republic, 96 Mo. App. 125; Kent v. Highleyman, 17 Mo. App. 9; 1 Corpus Juris, page 709, section 335; Shepard v. Bank of Missouri, 15 Mo. 144; Columbia

Brewing Co. v. Berney, 90 Mo. App. 96. (2) In addition to a general denial, defendant specially pleaded the matter upon which he relied to surcharge the alleged account stated, thus notifying plaintiff of the special defense upon which he relied; plaintiff denied generally such matter specially pleaded, and under the pleadings and evidence, defendant's given instructions .one and two were legal and proper and submitted to the jury only the issue as to whether or not Mr. Dempsey had received money, and in what amount, due the firm after the date of the alleged settlement. Barr v. Lake, 147 Mo. App. 252. (3) Appellant's abstract fails to show the filing of a bill of exceptions.

BARNES, C.—This suit was instituted in the circuit court of Pike County, Missouri, by Sallie C. Dempsey, widow and assignee of I. C. Dempsey, against Tom B. McGinnis, former law partner of the deceased Dempsey, upon a settlement of the partnership affairs in the form of an account stated.

The account stated was in the following form:—

"The undersigned, I. C. Dempsey and Tom B. McGinnis have this day settled and adjusted all matters of difference between them, including moneys collected on firm account since said firm was dissolved, to-wit:

Said I. C. Dempsey charges himself with moneys received as follows:—

(items totalled at $710.70).

And receives credit for the following amounts paid out by him, viz:

(items totalled at $45.25; the balance of $665.45 was struck, McGinnis allowed one-half thereof, also one third of a $500 fee received of Wm. C. Prewitt, thereby giving McGinnis credit for $499.38).

And the said Tom B. McGinnis charges himself with amounts as follows:—

(Items totalled at $62), and,

Credits

(totalled at $1.40, one-half shown due Dempsey; and a balance due Dempsey upon settlement July 26, 1907 of $836.67; from which the total $469.08 was deducted, and final balance struck as 'due Dempsey $367.59'). 'Dated April 9, 1909,' and signed by, 'I. C. Dempsey' and 'Tom B. McGinnis.'

The following cases are yet pending in the courts in which the fees received by Dempsey & McGinnis are to be equally divided between them, viz:—

Thomas B. Ingwerson v. Chicago & A. R. R. Co.
James H. Wright v. William S. Green.
James H. Wright v. Jacintha Atkinson et al.
John H. Turner v. St. Louis & Hannibal R. R.
  Co.
Sarah Anderson v. Prewitt et al., N. Mexico.
Scott Grant Peak et al. v. Frances Peak et al.
This 9th day of April, A. D. 1909.

           I. C. DEMPSEY,
           TOM B. McGINNIS.''

The entire account stated was in the handwriting of Dempsey and McGinnis, portions being in the handwriting of each, and the two signatures of each being identified.

Defendant filed an amended answer which in so far as pertinent here, in addition to a general denial, reads:—

"This defendant further answering, admits that he and the said I. C. Dempsey were co-partners engaged in business and in the practice of law at Bowling Green, Pike County, Missouri, and transacted their said business under the firm name of Dempsey & McGinnis; that during the times that they were so engaged in said business, the said firm handled among other items the ones set forth in the petition herein, that in addition to the handling of said items, the said firm were engaged as attorneys in divers and sundry other matters and things in and about which the said firm of Dempsey and McGinnis earned and received a large sum of money to-wit: the sum of over two thousand ($2,000) dollars; that

among the items that were so handled by said firm of Dempsey and McGinnis grew out of the receivership of the Citizens Bank of Bowling Green, Missouri, in and by which and by reason thereof, there was paid to said I. C. Dempsey as attorney's fees and for services in and about the conduct of said business, over the sum of two thousand dollars ($2,000) which said sums of money were paid to said Dempsey during the life of said partnership; that this defendant has no knowledge or information as to when said moneys were so paid to said Dempsey, and at the time of the purported settlement set forth in plaintiff's petition, said Dempsey denied that he had received any moneys on account thereof.

This defendant further states that there was paid to the said I. C. Dempsey as attorney's fees in the case of W. F. Mayhall, Guardian of Bonham Freeman v. St. Louis & Hannibal Railroad, and in the case of James A. Wright v. Jacintha Watkinson et al., and in the case of Sarah Anderson v. Prewitt et al., and in the case of Scott Grant Peak et al. v. Frances Peak et al., attorney fees which aggregate more than one thousand dollars ($1,000)."

At the beginning of the trial plaintiff admitted:—

"That since the execution and assignment of this contract, there has been paid in the case of Sarah Anderson v. Prewitt et al., $100, one-half of which Mr. McGinnis is entitled to. It has been paid since April 9, 1909; and, there has also been paid as a fee in the case of Scott Grant Peak et al. v. Frances Peak et al., the sum of $15, one-half of which Mr. McGinnis is entitled to."

The account stated was then offered in evidence upon proof of handwriting and identification of signatures.

The defendant then made the following admission:—

"We will admit that the account was assigned that is, whatever this paper alleged involved in this suit was assigned by Mr. Dempsey to Mrs. Dempsey, and the

date of this assignment, May 3, 1911, we will admit that.''

Thereupon plaintiff rested her case, in chief.

On behalf of defendant, J. S. Fitzgerrell testified over plaintiff's objections which will be hereinafter noted, ''that he was practicing law at Bowling Green and had been since 1894; was a member of the law firm of Tapley & Fitzgerrell; knew I. C. Dempsey, who was engaged in practicing law when Fitzgerrell moved to Bowling Green; that the law firm of Dempsey & McGinnis was formed about the year 1900, and continued until a short time before January, 1910; that is, and the firm of Dempsey & McGinnis were together in the case of Bonham Freeman v. St. Louis & Hannibal Railroad, which was compromised for something over $6000; that two other attorneys were associated with them in that case, the settlement of which was had in 1910 or 1911, after Mr. Dempsey had gone to El Paso, Texas, but that Dempsey was in Bowling Green at the trial and assisted in the preparation made therefor. The settlement of the case was after the execution of the agreement between Dempsey & McGinnis. From the fees obtained in that case $250 was paid to Mrs. Dempsey, although she claimed more.

I am familiar with the case of the Citizens Bank of which Mr. Dempsey was Receiver; there were no legal services rendered in the matter of the Citizens Bank during the life of the partnership of Dempsey & McGinnis. The assets of the bank consisted of real estate, farm lands and town property, and a lot of notes secured by chattel mortgages and deeds of trust, and Mr. McGinnis attended to certain matters and held conferences with the rest of us, and Mr. Dempsey determined what to do with reference to certain other matters, and assisted, as I recall, in litigation we had over it, but just what he did with principal notes or principal deeds of trust I don't now recall, he did whatever was necessary, just as much as any of the other three; there were four attorneys engaged in that after

the partnership of Dempsey & McGinnis was formed, "at the time or prior to the appointment of a receiver, and subsequent to it, the arrangement was had between Judge Dempsey and Tapley and Fitzgerrell that the attorney's fees and the receiver's fees was to be hotch-potch; in other words, Judge Dempsey was to have half of such attorney's fees as the court allowed us, and we were to have one-half of such attorney's fees, or rather, half of such receiver's fee as was allowed Judge Dempsey, and that we were all to participate in the work of the receivership, or that was still the agreement when the firm of Dempsey & McGinnis was formed." "Well, it was referred to at the time Judge Dempsey filed an application for an allowance, and which was near the close of the receivership and Judge Dempsey and we insisted that he charge more than $1200. This receivership and the work incident to the closing up of the bank business continued throughout the partnership of the life of Dempsey & McGinnis, unless they dissolved their partnership in April, 1909, if they did, that receivership ran a little. I think the business was closed practically but the allowance wasn't made. Our firm was on the record as attorneys for the receivership and whatever was allowed our firm as attorneys was divided with Mr. Dempsey. He got half."

The record of the Circuit Court, under date of April 1, 1909, was then offered showing an allowance to Mr. Dempsey, as receiver, in the sum of $2096, in addition to the sum of $1200 theretofore allowed him, and also making an additional allowance to Tapley & Fitzgerrell as his attorneys in the sum of $700, they having theretofore been allowed $800, making a total allowance of $1500, to them. And also the record of the Circuit Court, under date of Oct. 13, 1909 acknowledged receipt of the mandate of this appellate court affirming said allowance (which from the files we find to have been affirmed upon motions for non-compliance with rules) also record entries under dates of Oct. 15th and

20th, 1909, being records of receiver filing receipts for moneys paid himself and his attorneys Tapley & Fitzgerrell, pursuant to the order of the court, and his final discharge as receiver.

Mr. Fitzgerrell further testified, "Judge Dempsey insisted that at the time he wanted more money, and that he thought the law would give it to him, and that he was hotch-potching; what he got as receiver, and it was being divided between he and McGinnis, and between us, and he felt like he ought to have more money than the $1200, that was our understanding of what he had accepted in the start for his services. Mr. Dempsey got half of this fee, that is, the fee that was allowed by the court to Dempsey & McGinnis. We gave him a receipt and he kept the money; he never turned the money over to us; we gave him receipt for the total fee and he paid us half of it, and he paid us half of the receiver's compensation, and we gave a personal receipt for that."

Witness further stated that Sam Pollard handled on behalf of Mr. and Mrs. Dempsey their claim against Tapley & Fitzgerrell for part of the fees claimed by Dempsey in the Bonham Freeman suit, and identified a letter written by Mr. Pollard to Mr. Tapley under date of Nov. 6, 1912, after Dempsey's death, to show an admission of receipt of $250 in Bonham case.

Mr. Fitzgerrell further testified that, "we were retained as attorneys in the Bonham Freeman suit in 1908 or 1909; the suit was brought to the February term, 1909, of the Pike County Circuit Court; our firm, and the firm of Dempsey & McGinnis brought the suit; settlement was had after Judge Dempsey went to El Paso, Texas."

W. O. Gray testified for defendant that he was a lawyer engaged in the practice for about forty years; had been looking after the collection of some matters growing out of the law business of Dempsey & McGinnis on behalf of Dempsey, after Dempsey had left for El Paso, and his recollection was that he collected $15

in the Scott Grant Peak case, which he sent to Judge Dempsey, it may have been that he collected $25 or $30, sending Dempsey $15, as he was to divide what he collected.

Thereupon the defendant rested his case, and the plaintiff offered in evidence record of the circuit court showing the Bonham Freeman case was filed on Nov. 10, 1908, by Tapley & Fitzgerrell, attorneys, and on June 14, 1909, I. C. Dempsey, Tapley & Fitzgerrell, as attorneys for Bonham Freeman filed a motion to sue without making deposit or giving bond.

The testimony offered on behalf of defendant was received over the objection of plaintiff, because plaintiff had admitted all moneys which defendant claimed had been paid on the cases that are enumerated in the contract sued on and read in evidence, as yet pending in the courts, and that under the pleadings no other evidence could be offered, save and except, of and concerning those cases enumerated in the contract sued on, and objected to the introduction of any testimony with reference to the claim growing out of Bonham Freeman, became that matter was adjusted as far as the contract shows previous to the execution of the contract; and, it wasn't a matter of difference between Mr. Dempsey and Mr. McGinnis at the time of the execution of the contract, and objected to the reception of any evidence of and concerning the receivership, or any attorney's fee which comes out of Dempsey's relations as receiver to the Citizen's Bank, for the reason "that it's outside and beyond the terms of the contract of settlement here sued on, and that there is no allegation in the answer that McGinnis was entitled to anything for services rendered by him in the receivership business." The trial resulted in a verdict for defendant.

The account sued on was an account stated; it was an agreement between Dempsey and McGinnis concerning previous transactions as parters in the practice of law; fixing the amount due in respect to such trans-

actions; written, examined and signed by the parties; and whereby McGinnis promised to pay the balance shown to be due from him to Dempsey. It was not a "settled" account, as that term is generally understood, for the reason that this balance was not in fact paid. The defendant sought to *surcharge* the account, which in equity practice meant, "to prove the omission of an item from an account which is before the court as complete, which should be inserted to the credit of the party surcharging." [Bouvier's Law Dictionary; Black's Law Dictionary; 2 Story's Equity Jurisprudence (14 Ed.), Sec. 701.] And under our practice the right to surcharge is vouchsafed to the defendant in an action at law when pleaded. [Union Electric Light and Power Company v. Surgical Supply Co., 122 Mo. App. 631, 99 S. W. 804; Kenneth Investment Co. v. Bank, 96 Mo. App. 125, 70 S. W. 173; Wonderly v. Christian, 91 Mo. App. 158; McKeen v. Bank, 74 Mo. App. 281; Commercial Electrical Supply Co. v. Meysenburg, 85 Mo. App. 337.] The answer of defendant, however, does not charge the omission from the account stated, of all reference to moneys received by Dempsey by virtue of having been receiver in the Citizens Bank case, and of fees in the Bonham Freeman case, nor that the omission thereof was the result of fraud, accident or mistake; and in order to surcharge the account stated with the moneys thus received, it was necessary to allege and prove, not alone that Dempsey received moneys as receiver and as attorney in the Bonham Freeman case, but that the same were items which properly should have been incorporated in the account stated, and were not so incorporated because of fraud, accident or mistake. [Columbia Brewing Co. v. Berney, 90 Mo. App. 96; Barr v. Lake, 147 Mo. App. 252, 126 S. W. 755.]

Lord HARDWICKE in Pitt v. Cholmondeley, 2 Ves. 565, 566, quoted in Story's Equity Juris., sec. 701, draws the distinction between *surcharging* and *falsifying* a stated account, and an action upon an open account in this language:

"Upon a liberty to the plaintiff to surcharge and falsify, the *onus probandi* is always on the party having that liberty; for the court takes it as a stated account and establishes it. But if any of the parties can show an omission for which credit ought to be, that is a *surcharge;* or if anything is inserted that is a wrong charge, he is at liberty to show it, and that is a *falsification.* But that must be by proof on his side. And that makes a great difference between the general cases of an open account, and where (leave is given) only to surcharge and falsify; for such must be made out."

In Missouri, a stated account is only prima facie correct, does not create an estoppel, but simply affords strong presumptive evidence, which may be rebutted, stronger of course where the items are cast up by the respective parties, submitted to the other of them, and signed by each, as in the case at bar. [Elmore-Schultz Grain Co. v. Stonebraker, 214 S. W., 216, 221, (Mo. App.); Pickel et al. v. St. Louis Chamber of Commerce Ass'n, 10 Mo. App. 191: Barr v. Lake, 147 Mo. App. 252, 257.] It follows, therefore, that the two instructions given on behalf of defendant were erroneous, in that in addition to finding that Dempsey had received moneys due to the law firm of Dempsey & McGinnis, they failed to require the jury to find that such moneys were not incorporated in the stated account by reason of fraud, accident or mistake. This applies only to the fees, if any, received by Dempsey on account of the Bonham Freeman case and under the receivership.

As to the six cases set forth in the stated account, a different rule would apply, namely, upon showing receipt by Dempsey of fees in those cases, the burden would then be upon plaintiff to show payment of one-half thereof to McGinnis, because as to those six items there was no surcharging of the account, because they were incorporated in said account stated.

Under the evidence adduced in this case, the plaintiff was entitled to an instruction that the jury would

not consider moneys received by Dempsey as receiver of the Citizens Bank, either under the order of the court or as a result of his dealings with the firm of Tapley & Fitzgerrell, whereby the fees of the receiver and the fees of said attorneys were hotch-potched.

It is unnecessary for us to voice our disapproval or approval of the arrangement between the receiver and the attorneys for the receive, for the very obvious reason that the pleadings merely admit that Dempsey and McGinnis were law partners. There is neither pleading or proof of a specific agreement to divide all moneys earned by each of the partners or by Dempsey; and that neither the fees received from, or the pendency of the receivership matter, were set out in the account stated, because of fraud, accident or mistake. The fees of the receiver were allowed for services rendered as an officer of the court, commencing at a period antedating the formation of the partnership between Dempsey and McGinnis, and his fees were allowed him in his individual capacity as receiver and not as an attorney, and the legal services were to be performed by the receiver's attorneys, Tapley & Fitzgerrell, for which they appear to have been satisfactorily remunerated. It follows that the trade between Dempsey on the one hand and Tapley & Fitzgerrell on the other, whereby Dempsey divided with Tapley & Fitzgerrell the fees he received as receiver and Tapley & Fitzgerrell with the receiver the fees allowed them as attorneys for such receiver, resulted in such an acquisiting of moneys by Dempsey as do not lie within the purview of a contract for the practice of law.

The partnership settlement of April 9, 1909, between Dempsey & McGinnis undertook to settle and adjust all matters of difference between them, including moneys collected on firm account and specified six cases then pending in courts in which the uncollected fees were to be divided equally between them. Defendant by his pleading says that "at that time of the purported settlement set forth in plaintiff's petition, said Dempsey

denied that he had received any moneys on account"
of his receivership of the Citizens Bank, and while that
matter is thus shown to have been raised between the
parties at the very time of the settlement, defendant
makes no effort to plead or show fraud, accident or mis-
take in the omission thereof from the list of cases then
pending in court, the fees of which were to be divided.

There is some evidence that prior to the partner-
ship settlement Dempsey had received an allowance as
receiver of the sum of $1200, because the additional
allowance to him was made on the 1st day of Apr., 1909,
in the sum of $2096, and refers to the $1200, "as there-
tofore allowed him." The record is not definite as to
the date of that allowance, nor is the record definite as
to the date of the dissolution of the partnership between
Dempsey and McGinnis, but the order for the additional
allowance to receiver and attorneys for the receiver,
was made on the 1st day of April, 1909, nine days prior
to the settlement between the partners; and the state-
ment of Dempsey to Fitzgerrell that he, Dempsey, felt
that he should have more than $1200, because he was
"hotch-potching" with his attorneys and it was being
divided between he and McGinnis, cannot be construed
as being such an omission as would warrant the submis-
sion to the jury of the question as to moneys obtained
as a result of dickering between receiver and his attor-
neys, for the reason that it was bound to have ante-
dated the settlement between Dempsey & McGinnis and
does not tend to discredit another and different ar-
rangement between Dempsey & McGinnis, as evidenced
by their settlement of April 9, 1909.

The settlement between Messrs. Dempsey and Mc-
Ginnis undertook to state with particularity the collec-
tions and expenditures made by the partners in the
general partnership business which had theretofore been
dissolved, and undertook to identify the cases then
pending in court from which the collection of fees were
to be anticipated which should be divided between the
partners, and as appears from such settlement, it was

the second of the kind between the partners. It found a definite sum due from McGinnis to Dempsey, and under it arose the presumption that all previous dealings between the parties as partners, and the respective liability of each to the other, were adjusted therein; and in the absence of fraud, accident or mistake, properly pleaded, as was not done in this case, and no evidence appearing therein upon which to base such a charge, the plaintiff's refused instruction No. 3, directing the jury not to surcharge the account stated with fees received under the receivership should have been given.

In view of the above and foregoing, the Commissioner recommends that the judgment of the trial court be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of BARNES, C., is adopted as the opinion of the court. Judgment of the Circuit Court is, accordingly, reversed and the cause remanded.

*Reynolds, P. J., Allen* and *Becker, JJ.,* concur.